# Frenkel *v.* Hudson.

*Bill in Equity for Specific Performance of Verbal Agreement to execute Mortgage.*

1. *Purchase for value; what is.*—When land is conveyed by a stockholder to a private corporation, or joint stock company, in payment of

[Frenkel v. Hudson.]

his subscription to the capital stock, this constitutes the company a purchaser for valuable consideration, whether certificates of stock are issued to him or not.

2. *Notice to agent; when operative against principal.*—The general rule is, that notice acquired by an agent while transacting the business of his principal, of a fact which it is his duty to communicate to his principal, operates as notice to the principal; but this. rule does· not apply when the agent is acting in his own interest, and against the interest of the principal; as where an officer or agent of a private corporation, or joint stock company, sells and conveys land to it, his knowledge of an outstanding equity does' not charge the company with notice.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. JOHN A. FOSTER.

OVERALL & BESTOR, and PILLANS, TORREY & HANAW, for appellant, cited *Terrell v. Br. Bank of Mobile*, 12 Ala. 502; *Lucas v. Bank of Darien*, 2 Stew. 289; *Reid v. Bank of Mobile*, 70 Ala. 199; *Craft v. Russell*, 67 Ala. 9; *Barton v. Barton*, 75 Ala. 400; Angell on Corp., § 307; *Railroad Co. v. Tipton*, 5 Ala. 787; *Beene v. Cahaba Railroad Co.*, 3 Ala. 660; *Marsh v. Burroughs*, 1 Woods, C. C. 463; *Upton v. Tribilcock*, 91 U. S. 45; Cook on Stockholders, §§ 12–16, 69, 73; *Glenn v. Semple*, at the last term; *Bailey v. Clark*, 21 Wall. 284.

GREGORY L. SMITH, *contra.*—(1.) The Point Clear Improvement Company, to whose rights the defendant succeeded, was not a purchaser for value. There is no evidence that it parted with any consideration whatever for the property. Adams, the only witness examined on the subject, testifies that, if that company gave any consideration, he never knew it. The allegation that Goelet was president of the company at the time, and that he "simply took stock in the said company in the name of himself and said Adams for the said property," is coupled with the allegation that the company paid nothing; and the two allegations are not inconsistent with each other. The company did not part with any evidence of indebtedness, nor give up anything of value, nor change its position for the worse in any particular. *Spira v. Hornthall*, 77 Ala. 146. (2.) But, if the company paid value for the property, it is nevertheless chargeable with notice of the outstanding equity asserted by the bill. The company was formed by Goelet and Adams, for the express purpose of buying this property; and Goelet, in purchasing the property for the company, was only carrying out the objects of its creation, and acted directly within the line of his duty and authority as president; and his knowledge, under these circumstances, is notice to the company.

[Frenkel v. Hudson.]

*Reid v. Bank of Mobile,* 70 Ala. 211. Moreover, the company knew from its own title that Goelet, its agent and president, was conveying property as the president of the insurance company, to Adams, who was a mere conduit for passing the title, and that it paid no consideration to Adams. If any consideration at all was paid by the improvement company, it was paid directly to Goelet, in satisfaction of his individual debt, for a conveyance of property belonging to the insurance company; and it was bound to know that Goelet, as president of the insurance company, had no power to do this, except under some special contract between himself and that company. It was, therefore, charged with notice of the fact that the conveyances were made under some special contract between said Goelet and the insurance company, and was put on inquiry as to the terms of that contract.— *Whelan v. McCreary,* 64 Ala. 325 ; *Taylor v. A. & M. Asso.,* 68 Ala. 240; *Rosette v. Wynn,* 73 Ala. 147.

SOMERVILLE, J.—The appellee Frenkel, as assignee of the Citizens' Mutual Insurance Company, an insolvent corporation, filed the present bill against the appellant, Hudson, who is assignee of the Point Clear Improvement Company, also an insolvent corporation, and other defendants, to compel specific performance of an alleged agreement to execute a mortgage to secure the purchase-money of certain real estate conveyed by the complainant insurance company, in February, 1885, to the defendant Adams, and by the latter to the defendant corporation, the Point Clear Improvement Company. A second aspect of the bill, claiming a vendor's lien on the same property, having been abandoned as untenable, need not be noticed in this discussion.

The main issue, in our opinion, upon which the decision of the cause must turn, is, whether the Point Clear Improvement Company, to which Adams conveyed the land, can be regarded as a *bona fide* purchaser for value, without notice of the latent equity sought to be fastened on the property in the present bill. The chancellor decided that the company, as vendee, was chargeable with such notice, and this finding is before us for review.

Our first inquiry is, was the defendant company a purchaser for value ? We think that it was, very clearly. The testimony shows an agreement of the Citizens' Mutual Insurance Company to sell its undivided half interest in the property to one Goelet, for a consideration of nine thousand dollars, and, as we may also admit, an agreement proved on his part to secure the amount by mortgage, or

[Frenkel v. Hudson.]

else to have Adams secure it, to whom, as a convenient
*conduit* of title, the property was conveyed by the direction
of Goelet. The deed to Adams, bearing date February 18th,
1885, and filed for record in the Probate Court on the same
day, recited on its face, contrary to the truth, a cash con-
sideration of nine thousand dollars in hand paid by the
vendee, nothing in fact having been paid. He had already
purchased, for a like consideration, the other half interest
in the same property, from the People's Savings Bank.
Goelet had subscribed for one hundred and sixty-three
shares of the capital stock of the Point Clear Improvement
Company, for which he was indebted to said corporation in
the sum of sixteen thousand three hundred dollars. Adams
was a subscriber for one hundred and sixty shares, and the
remainder of the four hundred shares was taken by other
subscribers. The entire property, including both the half
interest purchased by Adams from the People's Savings
Bank, and that purchased from the Citizens' Mutual Insur-
ance Company, was conveyed to the improvement company
for a recited consideration of $20,000, in payment or satis-
faction of so much of the stock subscriptions, including
those of both Goelet and Adams. The bill, it is true, which
is relied on as evidence for the defendants, alleges that for
this land, so conveyed, the Point Clear Improvement Com-
pany "paid nothing;" but it avers, at the same time, that
the consideration received for the property was stock in the
company taken in the name of Adams and Goelet. The
testimony abundantly shows that stock certificates were
issued to Goelet, precisely to what amount it does not ap-
pear. But, whether the certificates were issued or not, his
subscription was, *pro tanto*, paid and satisfied by the con-
veyance of the property. The issue of the certificates would
confer no rights additional to the ownership of the stock,
but would merely be evidence of such ownership. The
rights thus secured by Goelet obviously constituted a valua-
ble consideration. He thereby became the holder of a large
amount of corporate stock, which was valuable property,
subject to ownership, transfer, levy, and sale. Such owner-
ship also invested him, incidentally, with the valuable
rights of voting at stockholders' meetings, of participating
in the management of the corporate business, and of sharing
in the dividends of profits; to say nothing of the right to
receive his aliquot part of the capital, on dissolution of the
corporation, or termination of its corporate existence free
from debt.—Cook on Stock and Stockholders, §§ 5–10 ;
*Fisher v. Essex Bank*, 5 Gray, 373. If this be not a valua-
ble consideration, it would be difficult to define what would
11

[Frenkel v. Hudson.]

be. The case is entirely different from the mere agreement of a creditor to take goods in payment of an indebtedness past due, and entering a credit on account for the price, without surrendering anything valuable, which has been held not to constitute such creditor a purchaser for value. *Spira v. Hornthall*, 77 Ala. 137.

We hold that, under the facts declared in the record, the defendant corporation was a purchaser for value of the property in controversy.

2. We next inquire whether the vendee of this property, the Point Clear Improvement Company, is chargeable with notice of Adams' defect of title. Did it have notice of the fact that he acquired title under an agreement of Goelet to execute the mortgage described in the bill? The corporation was organized for the purpose of carrying on a hotel business, and other enterprises collateral to this object. It was an artificial person, entirely separate and distinct from the natural persons owning shares of its capital stock. And this capital stock was a trust fund to be preserved for the primary benefit of the corporate creditors,—a principle which has a potential bearing, as here, in the case of insolvent corporations. — *Glenn v. Semple*, 80 Ala. 159. It no where appears that the board of directors, or corporate managers of the company, had knowledge of any facts sufficient to put them on inquiry as to the existence of this equity. The only mode in which it is sought to bring home notice to the company is through its president, Goelet, who had actual knowledge of the alleged agreement; and it is insisted that the knowledge of the agent must be imputed to the principal. The general rule is, that notice of a fact acquired by an agent, while transacting the business of his principal, operates constructively as notice to the principal. This rule applies, of course, as well to corporations as to natural persons.—*Reid v. Bank of Mobile*, 70 Ala. 199. It is based upon the principle, that it is the duty of the agent to act for his principal upon such notice, or to communicate the information obtained by him to his principal, so as to enable the latter to act on it. It has no application, however, to a case where the agent acts for himself, in his own interest, and adversely to that of the principal. His adversary character and antagonistic interests take him out of the operation of the general rule, for two reasons : *first*, that he will very likely, in such case, act for himself, rather than for his principal; and, *secondly*, he will not be likely to communicate to the principal a fact which he is interested in concealing. It would be both unjust and unreasonable to impute notice by mere construction under such circum-

stances, and such is the established rule of law on this subject. — *Terrell v. Branch Bank of Mobile*, 12 Ala. 502; *Lucas v. Bank of Darien*, 2 Stew. 321; *Wickersham v. Chicago Zinc Company* (18 Kan. 481), 26 Amer. Rep. 784; Angell & Ames on Corp., §§ 308, 309; Story on Agency, § 140.

The testimony satisfies us that Goelet bought the land from the Citizens' Mutual Insurance Company for himself, at one price, and sold it at another to the Point Clear Improvement Company, in payment of a debt due for stock subscription. The contention that he bought for the defendant company is not sustained by the record. In making the sale, therefore, through Adams, he was acting for himself, in his own interest, and in an adversary character. It is not to be supposed that he communicated his knowledge of the alleged equity to his vendee, by informing its board of directors, or other managing officers, of the existence of such a prejudicial fact. His own knowledge, as president of the company, was insufficient to charge the company in its corporate capacity with notice.

The decree of the chancellor, being opposed to these views, is reversed; and a decree will be rendered in this court, adjudging the complainant not to be entitled to the relief prayed, and dismissing his bill.

