ROPES, Appellant, *v.* NILAN et al., Respondents.

(No. 3,021.)

(Submitted November 20, 1911. Decided November 22, 1911.)

[119 Pac. 479.]

*Corporations—Knowledge of Incorporators—Not Imputable to Corporation, When.*

Corporations—Knowledge of Incorporators—Not Imputable to Corporation, When.

1. Holders of an option to purchase an undivided half interest in a mine agreed with plaintiff that if he would perform certain services in taking and assaying samples, and the report was favorable, they would take up the option and convey to him one-third thereof, or a one-sixth undivided interest in the claim. Plaintiff performed the services, and the option was duly taken up, but the option purchasers refused to convey any interest to plaintiff, and thereafter, with the owner of the other undivided interest, organized a corporation, and conveyed the whole claim to it. *Held,* that the knowledge of such option purchasers of plaintiff's equitable interest in the property was not imputable to the corporation and that it was a *bona fide* purchaser, freed from any claim of plaintiff.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

Suit by L. S. Ropes against John M. Nilan and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. Henry R. Thompson,* for Appellant.

*Messrs. Haywood & Phelan,* for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action, brought by the appellant, to obtain a judgment decreeing him to be the owner of an undivided one-sixth interest in the Dandy quartz lode mining claim, unpatented, for an accounting of rents and profits from the respondents Nilan and Weisner, and for general equitable relief. At the close of plaintiff's case, the defendants moved for a nonsuit, which motion was granted, and judgment entered for them. Plaintiff appeals.

The district court evidently treated the motion for a nonsuit as a demurrer to the evidence, or a motion for judgment on plaintiff's evidence, and we shall do the same. This court will also treat the evidence as sufficient to prove all of those allegations which it reasonably tends to prove. Read in connection with the pleadings, it establishes the following facts: In April, 1906, Coffee and Brennan owned the Dandy claim. Defendants Nilan and Weisner had an option to purchase Brennan's half interest. They agreed with plaintiff that, if he would perform certain services in examining and taking samples from the claim, assaying the same, and furnishing a report thereon, they would take up the option, if the report was favorable, purchase the half interest, and give him one-third thereof, or a one-sixth undivided interest in the whole claim. Plaintiff accepted the offer and fully performed the services agreed upon, whereupon Nilan and Weisner acquired Brennan's interest. Afterward Krug brothers (two persons) bought the Coffee interest. Sometime in the fall of 1906 or the spring of 1907, Nilan and Weisner in effect refused to convey any interest in the claim to plaintiff. The latter talked with one of the Krug brothers and with Weisner about organizing a corporation, but Weisner said they were not in any hurry about it, so plaintiff, according to his own testimony, "just dropped the matter." However, it appears that the Rock Rose Mining & Milling Company, a corporation,

was organized on October 8, 1906, and on April 15, 1907, Nilan, Weisner, and the two Krugs conveyed to it the Dandy claim. It appears that the corporation has stockholders, other than Nilan, Weisner, and the Krug brothers. The purchase was made through its board of directors, consisting of Nilan, Weisner, the two Krugs, and A. P. Heywood. At the time of purchase, "nothing was said by anyone about a claim of Ropes." Heywood had no knowledge "that such an individual as Ropes existed." The reply to the answer of the Rock Rose Mining & Milling Company admits that the corporation purchased the claim for a valuable consideration, but alleges "that said purchase was made with the knowledge on the part of said corporation of plaintiff's claim of interest." The complaint contains no allegation that the respondents Nilan and Weisner have ever received any rents or profits from the claim; their answers allege that they have not done so, and no evidence was offered on the subject, save that it was shown that one car of ore was shipped. Not any allegations of fraud, deceit, or concealment are found in any of the plaintiff's pleadings. It is quite evident, however, that his theory of the case is that Nilan and Weisner acted fraudulently in conveying away his equitable interest in the claim.

Appellant contends that the testimony is sufficient to show, *prima facie,* that he, Nilan, and Weisner were mining partners, and that the two latter held a one-sixth interest in the Dandy claim as trustees for him; also that their contract was not, as a matter of law, within the statute of frauds. We shall assume, without deciding, that these contentions are correct.

While the evidence discloses that the Krug brothers must have known that the plaintiff was interested in some way in the project on foot, relative to acquiring the Dandy claim, it falls far [1] short of showing that they had any knowledge, either expressly or by implication, that he owned or claimed to own an equitable interest in the claim itself. The knowledge of Nilan and Weisner cannot be imputed to the corporation, for the reason that in transferring to the latter the interest of appellant they were acting adversely to him and to it; and the presump-

tion is that they would not disclose their knowledge of his equities. "The general rule which imputes the knowledge of the agent to his principal, and charges the latter with it, is based upon the principle that it is the duty of the agent to act for his principal upon such notice, or communicate the information obtained by him to his principal, so as to enable the latter to act on it. It has no application, however, to a case where the agent acts for himself, in his own interest, and adversely to that of the principal. His adversary character and antagonistic interest take him out of the operation of the general rule. * * * It would be both unjust and unreasonable to impute notice by mere construction under such circumstances; and such is the established rule of law on this subject. * * * Therefore it may be said that when notice is given to, or when knowledge is acquired by, a director, * * * when acting for himself in his private capacity, it will not be imputed to the corporation. The reason is that his interest is presumed to conflict with that of the corporation, and that there is consequently no presumption that he will divulge to the other officers of the corporation, with whom he is treating, any facts prejudicial to himself in the transaction." (2 Thompson on Corporations, 2d ed., sec. 1655.)

In the case of *State Bank of Moore* v. *Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A., n. s., 501, this court held that, while the knowledge of an agent is generally imputed to his principal, the rule does not apply where the conduct of the former is such as raises a clear presumption that he would not communicate the fact in dispute, as where, by imparting knowledge to the principal, the consummation of a fraud in which the agent was engaged would be prevented. (See, also, *Stanford* v. *Coram*, 26 Mont. 285, 67 Pac. 1005.)

The supreme court of Alabama, in *Frenkel* v. *Hudson*, 82 Ala. 158, 60 Am. Rep. 736, 2 South. 758, held that, where an officer of a private corporation conveys land to it, his knowledge of an outstanding equity does not charge the company with notice.

The court of appeals of Maryland, in *Winchester* v. *Baltimore & S. R. R. Co.*, 4 Md. 231, held that, where the president of a

44 Mont.—16

corporation executed to certain of its directors a mortgage of land on which his wife held an unrecorded equitable claim, having acted in the transaction, not for the corporation, but solely for himself, his knowledge of his wife's equities was not the knowledge of the company, and could not affect its rights, unless shown to have been communicated to it. (See, also, *Innerarity* v. *Merchants' Nat. Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; *La Farge Fire Ins. Co.* v. *Bell,* 22 Barb. (N. Y.) 54; *Wickersham* v. *Chicago Zinc Co.,* 18 Kan. 481, 26 Am. Rep. 784.)

There is nothing in the record to show actual knowledge on the part of the Rock Rose Mining & Milling Company that appellant had or claimed any interest in the Dandy lode claim. Neither are there any facts from which knowledge could be imputed to it. It is therefore in the situation of a grantee for a valuable consideration, without notice, either express or implied, of any outstanding equities against the title conveyed, and plaintiff cannot, under these circumstances, be adjudged to have any interest in the property conveyed as against it. Its title is good.

In disposing of the case, we have considered the rights of the appellant as contended for in his brief. The claim is there made that he is entitled to be adjudged the owner of a one-sixth interest in the Dandy lode claim. In deciding the point against him, we are not to be understood as expressing any opinion whether he has other equitable claims to relief.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.