COMERFORD, ADMX., RESPONDENT, *v.* UNITED STATES FIDELITY AND GUARANTY CO., APPELLANT.

(No. 4,272.)

(Submitted January 11, 1921.  Decided February 28, 1921.)

[196 Pac. 984.]

*Reformation of Instruments — Mistake — Bonds — Sureties — Parties.*

Sureties—Action on Bond—Parties.

1. In an action on a bond executed jointly by the principal and a surety company it was optional with plaintiff to proceed against either or both of the obligors, but where it was also sought to reform the contract and the surety moved that the principal be served with process, it was error to deny the motion.

Reformation of Instruments—Sureties—Bond—Evidence—Insufficiency.

2. Under the terms of a bond the surety was required to pay the amount of a judgment if its principal should fail to take an appeal to the supreme court. The appeal was taken. In an action

---

2. Reformation of surety and guaranty contracts, see notes in 65 Am. St. Rep. 521; 21 Ann. Cas. 271.

by the obligee to recover on the bond, reformation of the instrument was asked so as to hold the surety liable in the event of the affirmance of the judgment. Evidence reviewed and *held* insufficient to warrant reformation.

Principal and Agent—Knowledge of Agent Imparted to Principal—Presumptions.

3. The presumption that an agent has imparted his knowledge to his principal does not arise where the agent is acting in his own or another's interest, and adversely to that of his principal, and particularly where the agent is not acting as agent, but openly and avowedly for himself.

Reformation of Instruments—Mistake.

4. Where a mistake in an instrument was unilateral, *i. e.,* made only by one party to it, and not mutual, nor one which the other party to it knew or suspected, reformation did not lie.

Same—Extent of Remedy.

5. The purpose of the equity of reformation is not to make a new agreement, but to establish and perpetuate the true one, and courts cannot insert a provision which was omitted with the consent of the party asking reformation, although such consent was given in reliance on an oral promise of the other party that the omission should not make any difference.

Same—Scope of Remedy.

6. Reformation of an instrument will not be decreed on the ground of mistake unless the real intent of the parties is satisfactorily shown and the party seeking the relief was free from culpable negligence.

*Appeal from District Court, Missoula County; R. Lee Mc-Culloch, Judge.*

ACTION by Agnes Comerford, Administratrix of the estate of Thomas Comerford, deceased, against the United States Fidelity & Guaranty Company. From a judgment for plaintiff defendant appeals. Reversed.

*Mr. Aubrey Lawrence,* of the Bar of Fargo, North Dakota, *Mr. Frank Woody* and *Mr. A. J. Violette,* for Appellant, submitted a brief; *Mr. Lawrence* argued the cause orally.

Equity is not a system of jurisprudence by which a judge may say "there is no law but my will and my desires," but is simply a system of jurisprudence by which justice may be done in accordance with, and not in opposition to, these well-established principles of law: (1) That a written instrument is presumed to contain the real agreement of the parties.

---

4. Mistake as ground for reformation of instrument, see notes in 65 Am. St. Rep. 484; 117 Am. St. Rep. 228; 3 Ann. Cas. 444.

(2) That the courts proceed with caution in setting aside the written instruments, and is only in an extraordinary case where they do so. (3) The proof to justify the court in so acting must at least be clear, convincing and satisfactory. (4) That mistake alone is not sufficient; it must be established that the minds of both of the parties met upon the particular thing which it is sought to add to the contract. (5) That it is by no means sufficient to establish the intention, desire or needs of one of the parties. It must be shown by clear, convincing and satisfactory proof that the other party knew and agreed to this, and intended to incorporate it in the written instrument. (31 Cyc. 910, 915, 917, 947; *Cherry* v. *Brizzolara* (Ark.), 116 S. W. 668, 21 L. R. A. (n. s.) 511; *Grieve* v. *Grieve,* 15 Wyo. 358, 11 Ann. Cas. 1162, 9 L. R. A. (n. s.) 1213, 89 Pac. 569.)

It is claimed that the notice or knowledge or information which Attorney Woody had of the kind of a bond which the plaintiff claimed was agreed upon charged the United States Fidelity & Guaranty Company with that knowledge, and although the bond was executed by another agent, and with only the form of bond, letter of Mr. Woody and the form of the application before the officers of the company who authorized the issuance of the bond, yet the plaintiff claims the bond company did in fact make an agreement to pay this judgment if affirmed on appeal. If Mr. Woody did have knowledge of any such agreement and such an agreement did in fact exist, and he received the information while acting as attorney for the principal of the bond, the Kennedy Construction Company, then it was to the interest of himself and the construction company to conceal that fact from the defendant bond company in order to procure a bond with less liability, and having acted as he did, would be proof that he acted in fraud of his principal, the bond company, and therefore his knowledge or notice under the well-established rule was not the notice or knowledge to the appellant bond company. (2 Mechem on Agency, 1399, 1400, 1415; 2 C. J. 859, 864, 865; *Aetna*

*Indemnity Co.* v. *Schroeder,* 12 N. D.. 110, 117, 95 N. W. 436;
*Lowe* v. *Los Angeles Suburban Gas Co.,* 24 Cal. App. 367, 141
Pac. 399; *Congar* v. *Chicago & Northwestern Ry. Co.,* 24 Wis.
157, 1 Am. Rep. 164; *Wittenbrook* v. *Parker,* 102 Cal. 93,
41 Am. St. Rep. 172, 24 L. R. A. 197, 36 Pac. 407; *Wester-
field* v. *New York Life Ins. Co.,* 129 Cal. 86, 61 Pac. 667.)

There is not a scintilla of evidence that the defendant bond
company had any knowledge that the bond to be required was
to pay the judgment. It is idle to assert, unless we are will-
ing to follow our desires at the expense of our intellectual
honesty, that the one single word "appeal" in this written
instrument means that we thereby agree to pay a judgment
on appeal, when in fact the specific terms of the appli-
cation in connection with the word "appeal" and attached
to it, specify or define the word "appeal" if the word
"appeal" have any bearing at all in this way: "For exten-
sion of sixty days' time, the time allowed by law to prepare
and serve bill of exceptions." This was the application sub-
mitted to this company. The question of a bond which is set
out in specific language is that it is a bond for an extension
of time and that alone.

The plaintiff was precluded from recovery in this case be-
cause of the specific Montana statute that an instrument of
suretyship cannot be added to or modified or changed, and
that a surety can only be held to the exact terms of his con-
tract. (Rev. Codes, sec. 5682; *City of Butte* v. *Bennetts,* 51
Mont. 27, Ann. Cas. 1918C, 1019, 149 Pac. 92.) The court
must construe a contract as it is written and cannot ingraft
a new provision thereon against the will of one of the parties.
(*Manganese Iron Ore Co.* v. *Trotter,* 29 N. J. Eq. (2 Stew.)
561.) Sureties may rely upon the strict terms of their obli-
gation. The meaning of an appeal bond should be deter-
mined from its language, and not by the application of Code
of Civil Procedure, section 17, relating to the meaning of
words used in the Code. (*Bergevin* v. *Wood,* 11 Cal. App.

643, 105 Pac. 935; *Oregon Ry. & Nav. Co.* v. *Swinburne,* 22 Or. 574, 30 Pac. 322; 9 C. J. 32–34.)

"The bond speaks for itself; and the law is that it shall so speak; and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If the bond cannot have effect according to its exact words, the law does not authorize the court to give it effect in some other way, in order that it may prevail." (*Bishop* v. *Freeman,* 42 Mich. 533, 4 N. W. 290; *Vinyard et al.* v. *Barnes,* 124 Ill. 346, 16 N. E. 254; *Weir Plow Co.* v. *Walmsley,* 110 Ind. 242, 11 N. E. 232; *Noyes* v. *Granger,* 51 Iowa, 227, 1 N. W. 519; *Henrie* v. *Buck,* 39 Kan. 381, 18 Pac. 228; *First Nat. Bank* v. *Gerke,* 68 Md. 449, 6 Am. St. Rep. 453, 13 Atl. 358; *Shines* v. *Central Sav. Bank,* 70 Mo. 524.)

*Mr. James L. Wallace, Mr. John E. Patterson, Mr. Charles H. Hall, Mr. A. N. Whitlock* and *Messrs. Madeen & Russell,* for Respondent, submitted a brief; *Mr. Patterson* argued the cause orally.

It is clear from the instrument in question that it was intended by it to indemnify plaintiff in the sum of $17,800 for the consideration of staying execution and causing plaintiff to be restrained and desist from prosecuting her action in Idaho. To interpret the bond to mean that after plaintiff had been deprived of prosecuting her judgment and execution as she saw fit, and said bond had been given to indemnify her therefor, the bond was satisfied, and plaintiff without recourse, if defendant in said action took an appeal from a judgment, which was affirmed, would require the most profound absurdity.

The customary usage as to stay bonds and kindred bonds such as this is to indemnify plaintiff in the amount named to the extent of the judgment if not reversed. It is apparent that it was intended to pay the penalty of the bond unless the judgment was reversed, and the customary conditions of such

bonds provide that the penalty is forfeited if judgment is affirmed. The only reasonable or sensible construction that could be given is that such was the intention. Such stipulation, therefore, should be considered to be inserted in said bond, for according to section 5044, Revised Codes: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.". The contract, therefore, is to be read as including said condition. The form of the bond in question is that of a *supersedeas* bond on appeal, and not merely the form of a stay bond furnished before appeal. It includes the provisions of both, as it was intended it should.

It covering the ground and being intended as a statutory bond, we are entitled to recover upon it not only as a common-law bond, but to have read therein the provisions of the statute it was intended to satisfy. (*Gille* v. *Emmons,* 61 Kan. 217, 59 Pac. 338; 2 Cyc. 919.)

It is clear from all of the facts and circumstances in this case that the defendant surety company as well as the construction company, and the plaintiff understood, that where the word "appeal" was used, for instance, in the bond where it says: "That the defendant will, if said motion be overruled, take an appeal to the supreme court," it meant an appeal with effect, meaning a successful appeal. (*Boom* v. *St. Paul Foundry Mfg. Co.,* 33 Minn. 253, 22 N. W. 538; *Trent* v. *Rhomberg,* 66 Tex. 249, 18 S. W. 510; *Field* v. *Schricher,* 14 Iowa, 119.) As above indicated, it is our contention that the bond, when rightly understood and interpreted to effectuate the intention of the parties, permits a recovery without reformation; but the parties having entered into a more specific agreement, respondent is entitled to have it reformed to express such agreement. (*Nourse* v. *Weitz,* 120 Iowa, 708, 95 N. W. 251.)

This court in the case of *Parchen* v. *Chessman,* 49 Mont. 326, 142 Pac. 63, says: "Courts of equity are not bound by 'cast-

iron rules.' The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other.'' (See, also, *Callbreath* v. *Coyne,* 48 Colo. 199, 109 Pac. 428; *Sanford* v. *Gates-Townsend Co.,* 21 Mont. 277, 53 Pac. 749; *Parchen* v. *Chessman,* 53 Mont. 430, 164 Pac. 532; *Good Milking Mach. Co.* v. *Galloway,* 168 Iowa, 550, 150 N. W. 710; *Higgins* v. *Parsons,* 65 Cal. 280, 3 Pac. 881; *Cleghorn* v. *Zumwalt,* 83 Cal. 155, 23 Pac. 294; *Coughran* v. *Sundback,* 13 S. D. 115, 79 Am. St. Rep. 886, 82 N. W. 507; *Swofford Bros. etc. Co.* v. *Livingston* (Colo. App.), 65 Pac. 413.) In the case of *Callbreath* v. *Coyne, supra,* a situation somewhat analogous to the instant case was presented. (See, also, *Neininger* v. *State,* 50 Ohio St. 394, 34 N. E. 633; *Steinhauser* v. *Colmar,* 11 Colo. App. 494, 55 Pac. 291.) The case of *Braithwaite* v. *Jordan,* 5 N. D. 196, 31 L. R. A. 238, 65 N. W. 701, is an important case on this question, and contains a long discussion relative to enforcing bonds, drawn in contemplation of statutory requirements, though defective in execution, as common-law bonds. *Gardner* v. *California Guarantee Investment Co.,* 137 Cal. 71, 69 Pac. 844, is very much in point with the case at bar.

Appellant was bound by the knowledge of Mr. Woody to the same extent as if its president or vice-president, while having such knowledge, had personally completed execution of the bond by delivery thereof. (*Staats* v. *Pioneer Ins. Assn.,* 55 Wash. 51, 104 Pac. 185; *Getchell & Martin Lumber Co.* v. *Peterson & Sampson,* 124 Iowa, 599, 100 N. W. 550; *Maryland Casualty Co.* v. *Town of Wellston,* 47 Okl. 417, 148 Pac. 691; *King County* v. *Ferry,* 5 Wash. 536, 34 Am. St. Rep. 880, 19 L. R. A. 500, 32 Pac. 538; *Antonio Brewing Assn.* v. *J. M. Abbott Oil Co.* (Tex. Civ. App.), 129 S. W. 373.) In the case of *First State Bank* v. *Bridges,* 39 Okl. 355, 135 Pac. 378, the court says: ''Notice to an agent who represents both parties

to a transaction with their knowledge and consent is notice to either or both of them.''

MR. JUSTICE GALEN delivered the opinion of the court.

The defendant James Kennedy Construction Company was not served with process, and the trial court denied appellant's motion to require that company to be served with summons and made a party to the action as a necessary party to a complete determination of the controversy.

This is an appeal by the defendant surety company from a judgment rendered in favor of plaintiff upon a bond executed jointly by the James Kennedy Construction Company and appellant, which bond, after making recital that the plaintiff Agnes M. Comerford, as administratrix of the estate of Thomas Comerford, had recovered judgment in an action against the defendant James Kennedy Construction Company for the sum of $17,500 damages and that the plaintiff had procured a transcript of the record in said action to be made and sent to the state of Idaho for the purpose of commencing suit on said judgment in that state, and ''whereas, said court on the said 17th day of April, 1913, made an order requiring the defendant Kennedy Construction Company to prepare and file in this court, within ten days, a good and sufficient bond in the sum of Seventeen Thousand Eight Hundred ($17,800) Dollars in order to procure the recall of said papers and to stay execution:

''Now, therefore, we the undersigned, in consideration of the premises and in order to procure the recall of said papers, sent to the state of Idaho, and continue in force said order to stay said execution, do hereby jointly and severally undertake in the sum of Seventeen Thousand Eight Hundred ($17,800) Dollars, lawful money of the United States, and promise to the effect that, if said judgment and execution shall be stayed until the motion for a new trial is heard and decided, that the defendant will, if said motion be overruled, take an appeal to the supreme court of the state of Mon-

tana, from the judgment rendered in said action, and from the order overruling defendant's motion for a new trial, and if said motion for a new trial is overruled and the defendant fails to take an appeal to the supreme court of the state of Montana, within the time allowed by law for taking such appeal, we will pay to the said plaintiff in said action on demand, the amount of said judgment together with costs not exceeding in all the said sum of Seventeen Thousand Eight Hundred ($17,800) Dollars, lawful money of the United States.''

Plaintiff in her complaint in the case now before us asked a reformation of the bond as to its conditions, so as to include therein liability on the part of the surety to pay the judgment, it not having been reversed on appeal. (*Comerford* v. *James Kennedy Constr. Co.,* 50 Mont. 196, 145 Pac. 952.) The trial court found, as a matter of law: ''I. That the plaintiff is entitled to judgment upon said bond even without reformation in the sum of $17,800, together with interest thereon at the rate of eight per cent per annum from March 1, 1915. II. That the plaintiff herein is entitled to a decree reforming the bond referred to and sued upon in the plaintiff's complaint to conform to the intent and agreement of the parties hereto by inserting in said bond, immediately after the word 'appeal' where the said word appears last in said bond, the following, 'Or if such appeal is taken and the James Kennedy Construction Company is not successful in reversing said judgment or if said judgment shall be affirmed on such appeal.' III. That plaintiff is entitled to a judgment upon said bond as reformed as against the defendant herein, United States Fidelity & Guaranty Company, in the sum of $17,800, together with interest thereon at the rate of eight per cent per annum from and after the first day of March, 1915.'' The judgment is upon the bond as reformed in accordance with the court's second and third findings of law.

Two questions are presented for decision, as follows: (1) Is the surety liable, under the conditions of the bond as exe-

cuted, to pay the judgment affirmed on appeal? (2) Was a reformation of the bond justified? Both questions will be treated together, as they involve the same considerations.

Under the language of the bond as executed the obligation [1, 2] of the Kennedy Company, in the event its motion for a new trial was overruled, was "*to take an appeal*" or "*pay* * * * *on demand the amount of the judgment.*" By reformation it is sought to add to the conditions of the bond an obligation to pay the amount of the judgment in the event of affirmance on appeal, or, at least, to so construe the bond as to require payment in the event of such affirmance. At the outset, it appears on the face of the complaint that the James Kennedy Construction Company was a proper party to the action, involving, as it does, the reformation of its joint contractual obligation to the plaintiff. Section 6488 of the Revised Codes provides, in part: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of the question involved therein," and section 6491 provides in part: "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants, but if the consent of anyone who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason therefor being stated in the' complaint."

Ordinarily, under the provisions of section 6491, *supra,* in an action for debt on a bond all of the obligees are necessary parties to the action, the bond being as to them joint and not several. (*Montana Min. Co.* v. *St. Louis M. & M. Co.,* 19 Mont. 313, 48 Pac. 305.) It affirmatively appears that the bond was executed jointly by the appellant with the construction company. However, it was optional with the plaintiff to make both the principal and the surety on the bond parties to the action (sec. 6492, Rev. Codes), even though it was apparent on the face of the complaint that both obligors to the contract should properly have been made parties in order to

reform their joint contract. The question was raised by appellant's answer and by motion to require the construction company to be served with process before proceeding to a hearing on attempted reformation of the contractual obligation. The court should have required both obligors to appear, since the appellant insisted thereon, even though the plaintiff is given a several right of action against both the principal and surety.

There is a sharp conflict in the evidence as to the terms of the bond required to be furnished by the Kennedy Construction Company on the granting of a stay of execution in the damage suit, one witness (Attorney Hall) contending that the bond intended and demanded was to be in terms a *supersedeas* bond, as provided for by section 7102 of the Revised Codes, and the other witness (Attorney Frank Woody) insisting that the provisions of the bond as he understood the requirements were to be identical in form with the bond in fact furnished and filed, conditioned alone that the defendant construction company would take an appeal to the supreme court of the state of Montana if motion for a new trial was overruled, or, upon failing to take such appeal, pay the amount of the judgment on demand. However that may be, the fact remains that the appellant provided the character of bond required by order of court to be furnished and filed. It is executed as to conditions as stated in the order of the court and the application made therefor to the appellant. The order of the court directing the furnishing of the bond points out the object and purpose of the bond and indicates its conditions as follows: "In this case the defendant James Kennedy Construction Company is allowed ten days within which to file a bond in the sum of $17,800 on stay of execution, and it is ordered that execution be stayed during the ten days and upon the filing of bond as required, execution be stayed until the disposition of defendant's motion for a new trial or further order of the court. Counsel being present and having consented to this order."

The application for the bond made upon the forms prescribed and provided by the surety company in describing the character of bond desired, recites: *"Appeal—For extension sixty days' time to time allowed by law to prepare and serve bill of exceptions—copy bond attached,"* and the accompanying form of bond mentioned is the one which was executed and now forms the basis of this action. It appears that at the time application for the execution of the bond was made by James Kennedy, president of the construction company, to the agent of the surety company at Morehead, Minnesota (April 23, 1913), the letter of the attorneys for the construction company at Missoula, Montana (Woody & Woody), was presented to such agent as indicative of the conditions of the bond to be executed, wherein it is stated: "Frank went into court this morning and asked the court to make a formal order and the court made an order and entered it on the minutes directing the transcript of judgment sent to Pocatello recalled, but at the same time made an order requiring the Kennedy Construction Company to file a bond in the sum of $17,800 within ten days. Why he made it $300 more than the verdict we do not know, but we presume it was to cover costs. The law required a judge, when he made an order staying execution, to require a bond to be given, and when Judge Duncan made this order he failed to make an order requiring a bond to be given. This bond, when given, keeps in effect the order to stay execution until the motion for a new trial is decided, and the sooner you can get bond up and send it the sooner they will cease troubling you in Idaho, because the moment the bond is filed here, they will be required to recall the papers sent to Idaho, and stop all proceedings there, or else they will be in contempt of court."

Counsel, if not satisfied with the conditions of the bond filed, should have complained to the court. It affirmatively appears that the bond was examined by Attorney James L. Wallace, chief counsel for the respondent, as to its conditions after it was filed and long before affirmance of the judgment

on appeal to the supreme court. In this connection he testified on cross-examination: "Q. So you relied on the bond itself, didn't you? A. I did. Q. Upon the terms and conditions of the bond? A. Until we got to investigating it and thought it was— Q. Did you rely on the terms and conditions of that bond? A. We certainly did. Q. Well, in order to rely on the terms and conditions of a bond you must know the terms and conditions, must you not? A. Certainly. Q. And the action to reform the bond and change its terms and conditions was not brought for three years after the bond was given, was it? A. I don't think it was that long. Q. The bond was given on the eighth day of May, 1913, wasn't it? A. I believe it was. Q. And you commenced this present action in 1914, wasn't it? A. Yes, I think so. Q. Then for a period of two years did you rely on the express terms and conditions of that bond? A. Well, I will have to explain. Q. Just a minute; did you rely on the bond, yes or no? A. I will answer yes, and explain. Q. All right. A. We talked the bond over and the terms and conditions of the bond and came to the conclusion that it was valid but not according to the bond that was ordered. Q. But you relied upon the bond? A. No, we relied upon our rights in the case and other rights we might have. Q. Now, when you answer that question that you relied upon the bond, what did you mean? A. I believed we could make the bond good. Q. When did you first come to the conclusion that the bond was valid—you say you relied on it and talked it over. That was the first time you read it? A. The first time I read it I simply glanced over it. I was informed what it was given for and I glanced over it only. I didn't go into the obligations closely; I just glanced at the bond. Q. What did you think the bond was given for? A. I was told what it was given for. Q. What were you reading it over for? A. I was just glancing over it. Q. When was that? A. Several weeks after the bond was given. Q. Several weeks? A. Yes. Q. Can you say approximately how long after? A. I couldn't say as

to that. Then I got a certified copy of the bond, in, I think, November, 1913. Q. Do you remember when the appeal was taken in that case? A. No, I don't recall that. The record will show that. Q. Well, the judgment of the supreme court was handed down about January, 1915, wasn't it? A. I don't remember whether it was in 1915 or 1914. I don't remember now. Q. Well, you recall that it was 1915, wasn't it? A. I wouldn't say, without seeing the record. Q. I don't know but what that is in the pleadings. That is correct, isn't it, Judge, January, 1915? January 21, 1915? A. Then that is correct. Q. Now, going back again to this time when you first saw the bond. You say that was several weeks after it was filed? A. Yes. Q. That was several weeks after the eighth day of May, 1913? A. At the time it was filed—I don't know. I didn't know it was filed until Mr. Hall asked me if it was filed and if I had seen the bond. Q. Well, it is filed the second day of May, 1913, isn't it? A. Yes, sir. Q. Did you read all of the bond the first time? A. I don't think [I think] the obligation of the bond the first time I saw it. Mr. Hall had told me that the bond he had been demanding had been given—you will understand that several times before that I had been before the court and demanded that the bond be given. Q. You were the chief counsel in the case? A. Well, I was the one that brought the suit; I believe so. Q. Mr. Hall has pinned the medal on you. A. I was probably the chief counsel, but not the leading counsel. Q. You were the one who brought the litigation? A. Yes, sir. Q. You were deeply interested in it? A. Yes, sir. Q. You are deeply interested in this case? A. Yes, sir. Q. And several weeks after the bond was filed you read it over but didn't read the obligation? A. I read it over casually, but I had talked with Mr. Hall about it. Q. What do you mean by saying that you were relying on the bond? A. Why, we had a discussion about it, Mr. Woody and myself and the court—the old gentleman, Judge Woody—and the court told them they would have to give a bond and I supposed that

when the bond was ordered it was the same kind of a bond we had been expecting and demanding. Q. That was the first thing you were interested in finding out, wasn't it? A. Mr. Hall told me the bond was ordered and I presumed it would be given as we demanded. Q. When you first saw it your first interest was to find out what kind of a bond had been given? A. I glanced over it to see if it was a good bond. Q. Now, Mr. Wallace, you were chief counsel in the case in which judgment for $17,500 was given and you were arranging to collect the same and this bond was given for the protection of the plaintiff, your client, you don't mean to tell me that the first time you looked over the bond you didn't read the obligation of the bond, do you? A. I might have read over the bond but I didn't see anything invalid in it at that time because I wasn't really looking for anything. Q. When did you first rely on it? A. I relied on the right kind of a bond being given, on Mr. Woody giving the kind of a bond agreed on.''

But it is vigorously contended by respondent that Attorney [3] Frank Woody stood in the dual capacity of attorney for the construction company and also of agent and attorney in fact for the surety company, and that notice given to him as to the conditions of the bond required was notice to the surety company, and that therefore the same should be reformed as against the latter. We have reviewed the numerous authorities cited by counsel, but in our opinion they have no bearing upon the present case, for the rule is settled in this state (*Stanford* v. *Coram*, 26 Mont. 285, 297, 67 Pac. 1005) that ''the presumption that the agent has imparted his knowledge to his principal does not prevail where the agent is acting in his own or another's interest, and adversely to that of his principal, particularly when the agent is acting, not as agent, but openly and avowedly for himself. In such case, by reason of his antagonistic attitude toward the interests of his principal, the presumption does not arise that he has communicated his knowledge to his principal, but that,

on the contrary, he has refrained from so doing from motives of self-interest. (Mechem on Agency, sec. 723; 1 Am. & Eng. Ency. of Law, 2d ed., 1145; *Frenkel* v. *Hudson,* 82 Ala. 158, 60 Am. Rep. 736, 2 South. 758; *Wickersham* v. *Chicago Zinc Co.,* 18 Kan. 481, 26 Am. Rep. 784, 5 Morr. Min. Rep. 536; *Allen* v. *Connecticut River etc.. R.. R. Co.,* 150 Mass. 200, 15 Am. St. Rep. 185, 5 L. R. A. 716, 22 N. E. 917; *Innerarity* v. *Merchants' Nat. Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; *In re Plankinton Bank,* 87 Wis. 378, 58 N. W. 784; *Hickman* v. *Green,* 123 Mo. 165, 29 L. R. A. 39, 22 S. W. 455, 27 S. W. 440; *Third National Bank* v. *Harrison* (C. C.) 10 Fed. 243.)'' To the same effect see, also, *State Bank* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.) 501, 108 Pac. 914, and *Ropes* v. *Nilan,* 44 Mont. 238, 119 Pac. 479.

The principles of agency cited by counsel for respondent can have no application whatsoever in this case, as it appears that the attorney for the construction company, Frank Woody, did not execute the bond in question as agent for the surety company. His capacity as agent for the surety company in the execution of bonds was limited, in that he was not possessed of authority to execute such bonds independently of concurrence with another of the four persons mentioned in the general power of attorney given by the surety company for the execution of bonds in the county of Missoula, state of Montana, on behalf of the surety company.

Great reliance is placed by counsel for respondent upon the decisions of this court in *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469, and *Parchen* v. *Chessman,* 53 Mont. 430, 164 Pac. 531, in support of their contention that the bond in this action should be reformed, and, as reformed, the, judgment sustained. These decisions are clearly distinguishable, (1) because the action was solely between the parties to the promissory note attempted to be reformed, and (2) mutual mistake was shown.

The statute under which this case was brought reads as [4]  follows: ''When, through fraud or mutual mistake of

the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons, in good faith and for value." (Sec. 6108, Rev. Codes.)

"A mutual mistake is one which is reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument, and sometimes of the agreement itself." (23 R. C. L. 328.)

In this case the mistake, if any, was unilateral, *i. e.*, made alone by respondent or her attorneys, and, not being mutual or a mistake of one party which the other party at the time knew or suspected, reformation is not authorized. In such a case rescission is the proper remedy. (23 R. C. L. 328.)

Thus, we have before us the bond with its conditions as executed, and it must be interpreted in accordance with the law. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Sec. 5025, Rev. Codes.) "The language of the contract is to govern the interpretation, if the language is clear and explicit and does not involve an absurdity." (*Id.,* sec. 5027.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." (*Id.,* sec. 5028.) "However broad may be the terms of the contract, it extends only to those things concerning which it appears that the parties intended to contract." (*Id.,* sec. 5037.) (See *White* v. *Hulls, ante,* p. 98, and *State Bank of Darby* v. *Pew, ante,* p. 144.)

Applying the law with reference to a construction of the contract, it appears that the conditions of the bond were performed and appellant cannot now be held responsible for conditions neither required to be in the bond nor in fact included [5] therein. The equity of reformation is not to make a new

agreement, but to establish and perpetuate the true existing one. The court in recognizing the equity cannot make such a contract as it thinks the parties ought to have made or would have made if better informed, as by inserting in the instrument important conditions which the parties never fully assented to. The court merely makes the instrument just what the parties intended it to be. Neither will the court insert a provision which was omitted with the consent of the party asking reformation, although such consent was given in reliance on an oral promise of the other party that the omission should not make any difference. (23 R. C. L. 311.)

Whatever impulses may control individual action, courts must be governed by law. It is their province to interpret contracts which are open to interpretation, or they may enforce obligations, but it is beyond their power to make agreements for parties or to alter or amend those which the parties themselves have made. Courts may enforce, but not create, contractual liabilities. (*Bank* v. *Pew, supra; Frank* v. *Butte etc. Min. Co.,* 48 Mont. 83, 135 Pac. 904.)

A mistake will not be relieved against unless the real [6] intent of the parties is satisfactorily shown, and unless the party seeking the equitable relief is free from culpable negligence. (23 R. C. L. 321.)

In this case there is no evidence of mistake, mutual or otherwise. The character of bond ordered by the court was furnished and it was not objected to. It would manifestly be inequitable to read into the conditions of the bond new terms, even though respondent may suffer in consequence of the oversight or misinterpretation of counsel.

A separate bond for costs on appeal in the sum of $300 was furnished by defendant surety company upon the appeal to the supreme court from the order overruling motion for a new trial in the damage case, as required by section 7101 of the Revised Codes, and the respondent should have exacted a supersedeas bond in protection of her rights as provided in section 7102, or, in default thereof, should have had exe-

cution issued and proceeded to collection in satisfaction of the judgment. The bond sued upon, at the time the motion for a new trial was denied and appeal taken, had fully subserved its purpose.

There is no showing of fraud, mutual mistake, nor the mistake of one party which the other at the time knew or suspected, and reformation of the bond was improper, and the judgment appealed from is without foundation.

It is clear that the trial court was in error in finding as a matter of law, that the surety company is liable upon the bond without reformation, and also that a reformation of the bond should be made as prayed for, and in thereupon entering its final decree on the bond as reformed. The conclusions made by the trial court are inconsistent, and upon neither theory can the judgment be sustained.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and HOLLOWAY concur.

Rehearing denied April 11, 1921.