## WHITTAKER v. UNITED STATES FIDELITY & GUARANTY CO.

(District Court, D. Montana. June 30, 1924.)

No. 1095.

I. Pleading ⬅430(2)—Issue not raised by pleadings considered, where tried without objection or claim of variance.

Where issues not raised by pleadings were tried without objection or claim of variance, and both parties introduced evidence thereon, all issues so tried will be determined, and all evidence so introduced will be considered.

2. Judgment ⬅570(5)—Dismissal not on merits was not res judicata.

Dismissal of suit, not on merits, was not res judicata.

3. Principal and surety ⬅66(2)—Liability of hired and indemnified surety coextensive with that of principal.

Generally the liability of a hired and indemnified surety is coextensive with that of principal, the principal's fraud or mistake being no defense to the surety; the construction and implications being the same in regard to both, and reformation, if necessary, being available as against both.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

300 F.—9

**4. Appeal and error ☞1225—Condition implied in stay bond as against indemnified surety.**

Indemnified surety on stay bond on affirmance of judgment was liable for amount of judgment, though the bond because of mistake or fraud on the part of the principal did not so provide, since such surety had constructive, if not actual, knowledge of the conditions intended by the court and parties, and such condition was implied.

At Law. Action by Richard J. Whittaker, as administrator, against the United States Fidelity & Guaranty Company. Judgment for plaintiff.

James L. Wallace and Russell, Madeen & Clarke, all of Missoula, Mont., for plaintiff.

Frank Woody, of Helena, Mont., and Aubrey Lawrence, of Fargo, N. D., for defendant.

BOURQUIN, District Judge.   In this action upon a stay bond, the first count of the complaint sets out the bond in hæc verba, and alleges the condition is payment, if appeal is not "with effect"; the second count alleges the quoted words were omitted by the debtor's fraud, inadvertence, or mistake; and the prayer of the first is a money judgment, and of the second is likewise after reformation.   The answer denies the condition and omission as in the complaint alleged, alleges res judicata, and limitations to the second count.

At trial, plaintiff dismissed the second count, and both parties, in disregard of pleadings, theory, forms, and rules, proceeded, not only to resolve any ambiguity in the bond, but virtually as though the alleged omission by fraud or mistake was the issue, to determine the actual intent and contract, the intent of the court granting the stay on bond, and the legal implications attending the court's order entered therein; and to that end both parties introduced oral and other evidence appropriate to their methods of trial, without any objection or claim of variance.

[1] In these circumstances, although the issue (other than ambiguity and intent) by both parties tacitly adopted and tried is not joined in pleadings, and although in view of the pleadings alone some part of the evidence might be vulnerable to objections not made, it is clear and settled law that all issues tried are to be determined, all the evidence is to be considered, and the rule of decision is to conform thereto.   Accordingly, from the evidence, it appears that in 1913, in a local court, plaintiff's predecessor in office secured judgment for $17,719 against the foreign Kennedy corporation, and the latter, without notice or bond, procured a stay.   Disregarding it, the plaintiff, finding neither the debtor nor any of its property in Montana, pursued it by action and attachment in Idaho.   Thereupon, consequent upon discussion and understanding had between the judge and counsel for the parties, the court made an order of entry as follows:

"In this cause the defendant James Kennedy Construction Company is allowed 10 days within which to file a bond in the sum of $17,800 on stay of execution.   And it is ordered that execution be stayed during the 10 days,

and upon the filing of bond, as required, execution be stayed until the disposition of the defendant's motion for a new trial, or further order of the court, counsel being present and having consented to this order."

This discussion and understanding, testified to by one counsel of each party, in substance was that the plaintiff must be protected by a bond conditioned for payment of the judgment, if not reversed. The testimony of these counsel in essentials is without real conflict. Whether the condition was stipulated by the judge, as plaintiff's counsel testifies, or stipulated by said counsel, as defendant's counsel testifies, is immaterial; for, if the latter be right, the judge acquiesced and adopted it as his own.

In view of all the circumstances and including defendant's counsel's acknowledged ignorance of the requirements of a stay bond, and including the legal implications attending the court's order as entered, it is believed and found that court and counsel intended, understood, and agreed that the bond would include the condition aforesaid. Incidentally Kennedy's counsel was then and at all material times agent for the instant defendant, and has been of the latter's counsel in all litigation upon the bond.

Immediately after the order, Kennedy's other counsel and father of him testifying, wrote Kennedy the circumstances, and inclosed "something in the form of a bond." Letter and form were presented by Kennedy to this defendant; it executed the bond in issue, and received indemnity presumptively sufficient and yet held by it, and also received premiums until in 1916 at least. In May, 1913, by Kennedy the bond was filed, without notice to either court or plaintiff. It recites its occasion, and its conditions are as follows:

"Now therefore, we, the undersigned, in consideration of the premises and in order to procure the recall of the papers sent to the state of Idaho, and continue in force said order to stay said execution, do hereby jointly and severally undertake in the sum of seventeen thousand eight hundred ($17,-800.00) dollars, lawful money of the United States, and promise to the effect that, if said judgment and execution shall be stayed until the motion for a new trial is heard and decided, that the defendant will, if said motion be overruled, take an appeal to the Supreme Court of the state of Montana from the judgment rendered in said action, and from the order of the court overruling defendant's motion for a new trial, and if said motion for a new trial is overruled, and the defendant fails to take an appeal to the Supreme Court of the state of Montana, within the time allowed by law for taking such appeal, we will pay to the said plaintiff in said action upon demand, the amount of said judgment together with costs not exceeding in all the said sum of seventeen thousand and eight hundred ($17,800.00) dollars, lawful money of the United States."

In November, 1913, Kennedy's motion for new trial was denied; in January, 1914, it appealed and filed only cost bond; and in January, 1915, the judgment was affirmed. In the meantime, and some few weeks after the stay bond in issue was filed, another of plaintiff's counsel scanned it, and, as inexperienced as defendant's counsel, he believed it to be "all right." Later its failure to expressly include the condition intended was discovered, and its sufficiency was cause for anxiety, if not for doubt; but it had served Kennedy's purpose beyond remedy, execution could not be levied, and the bond was thereafter necessarily contemplated by plaintiff with hope, and as the only hope.

In 1914 and 1915, and subsequent to Kennedy's appeal perfected, plaintiff's resistance defeated Kennedy's motions, on its claim of conditions performed, to exonerate the bond. The judgment affirmed, this defendant refused demand for payment 'of the bond, and in the local court plaintiff's predecessor brought action against defendant to recover on the bond, with or without reformation to expressly include the conditions intended as aforesaid, and secured judgment. Defendant appealed, and in February, 1921, the judgment was reversed. See Comerford v. United States F. & G. Co., 59 Mont. 243, 196 Pac. 984.

[2] After remittitur, defendant moved dismissal, but, before heard, dismissal was had on plaintiff's application. Thereupon, and in 1923, the instant action was begun. The dismissal, by virtue of local law, was not upon the merits, and so is not res judicata.

[3] Adverting to the merits, that defendant equally with Kennedy is liable upon this bond, conditioned as intended, agreed, and proven, seems clear. Upon a bond, the hired and indemnified surety's liability is generally coextensive with the principal's, the latter's fraud or mistake is no defense to the former, the construction and implications are the same in respect to both, and, if reformation be necessary, it can be had against both.

[4] This defendant had constructive, if not actual, knowledge of the conditions intended by the court and parties for this bond. Its business is bonds, and it was bound and is presumed to know that the stay is for the benefit of the debtor, and the bond is for the benefit of the creditor; that the object of the bond is the security of the creditor, and to that end the usual condition is for payment of the judgment (see cases, 3 Corp. Jur. 1105; 17 Cyc. 1142); and that, if the court's order for stay and bond was general as entered, this usual and necessary condition would be implied by law (see cases, Brandt, Suretyship, § 453). In any variety of insurance, of which this bond is one, a general agreement for a policy implies the usual policy and conditions, therein conforming to the law of contracts in general. Eames v. Insurance Co., 94 U. S. 629, 24 L. Ed. 298. See cases, 26 Corp. Jur. 49, 50; 32 Corp. Jur. 1098.

So, too, defendant was bound and is presumed to know that if, without further inquiry, it relied as it did upon the debtor (its employer and co-obligor) seeking the bond, it did so at its peril, and is none the less liable that therein the debtor's representations of conditions of the bond may have been affected by fraud or mistake. See cases, 32 Cyc. 25, 64, 65, 66; Ward v. Surety Co., 167 Mo. App. 579, 152 S. W. 397; Spalding v. Tucker (Ky.) 51 S. W. 2.

Counsel's letter to Kennedy and the "something in the form of a bond" sufficed to advise defendant that the condition of the bond intended and required was most likely for payment in default of appeal "with effect"; that is, appeal with success, and that, although the "something in the form of a bond" omitted the necessary and implied words "with effect"; for, without those words, the bond, read literally, is no security or benefit to the creditor, is wholly for the advantage of the debtor, is no consideration to the creditor to stay his hand, does not conform to the implications of the court's order as entered of rec-

ord, defeats the object of a stay bond, and is the latter's antithesis, is a mere pretense and sham, delusion and snare, the height of absurdity, and shockingly unjust.

Here was notice of fraud or mistake, and at once putting defendant upon inquiry that would have fully acquainted it with the conditions intended, agreed, and understood. It made no inquiry, save of its co-obligor, the debtor, and must abide the consequences, viz. liability as though the bond was written as intended and the implied condition fully expressed. And this is no departure from the law of suretyship. It is statute as well as common law that the rules of law applicable to contracts in general are the rules applicable to contracts of suretyship or other insurance. See section 8198, R. C. Montana.

There is no peculiar sanctity as a halo of special privilege surrounding bonds and suretyship. Equally in respect to all contracts, the controlling factor is the intent and actual agreement, in all, in like fashion to be ascertained and enforced, and, in all, liability not to be farther extended by construction or otherwise. Even as absurdity and injustice in literal reading of contracts in general may be ambiguity, requiring resort to circumstances and oral proof to ascertain the intent and actual agreement (see sections 7529, 7531, 7534, 7546, R. C. Montana; Clappenback v. Ins. Co., 136 Wis. 626, 118 N. W. 245), so is the impossible aspect aforesaid, borne by the literal reading of this bond, a like ambiguity demanding like resort. And intent and agreement thus ascertained, the words or condition omitted by fraud or mistake will be supplied by implication, and the contract intended and made by the parties enforced.

As in respect to contracts in general, "there are many cases on the construction of bonds, where the letter of the condition has been departed from, to carry into effect the intention of the parties," says Chief Justice Marshall in Cooke v. Graham's Adm'r, 3 Cranch, 235, 2 L. Ed. 420. Thus a bond purporting to secure one contract, in the light of the circumstances, was applied to two other contracts. Hollenbeck v. Amweg, 177 Cal. 159, 170 Pac. 149. And a bond without any condition, having served its purpose, as in the instant case, was supplied with the condition by the parties intended and agreed, and the surety held liable thereon. Taylor v. Baumgartner, 27 N. D. 606, 147 N. W. 385.

Without needless marshaling of elementary principles or cases, it is believed that, upon the contract and bond by the court and parties intended and agreed and proven herein, with or without reformation of the written bond, defendant is liable in the amount of the penalty therein, with legal interest from January 21, 1915, and costs.

Judgment accordingly.