JOHNSON, APPELLANT, v. ROCKY MOUNTAIN FIRE INSURANCE CO., RESPONDENT.

(No. 5,453.)

(Submitted April 22, 1924.   Decided May 15, 1924.)

[226 Pac. 515.]

*Fire Insurance—Policy Provisions—Violation—Denial of Liability—Waiver—Pleading—Inconsistent Defenses.*

Fire Insurance—Policy Issued Without Written Application—Insured not Owner of Ground in Fee Simple—Waiver.
1.   Where plaintiff in an action on a fire insurance policy which provided that, if the insured building be on ground not owned by the insured in fee simple, the policy should be void, owned the building but not the lots upon which it stood and therefore had an insurable interest in the former, and the insurer issued the policy without a written application and made no inquiry concerning plaintiff's title to the lots, it could not escape liability under that provision of the policy.

Same—Policy Provision Against Subsequent Mortgage not Violated by Mortgage Which Did not Become Effective.
2.   Where a chattel mortgage executed by the insured after the issuance of a fire insurance policy which provided that it should be void if the property covered by it be or become encumbered, though filed in the office of the county clerk did not become effective because never delivered, the policy is not voided under that provision.

Same—Violation of Mortgage Clause as to One Class of Property Does not Void Policy as to Other Class.
3.   Under a fire insurance policy which places specific amounts of insurance on distinct and separate classes of property—as on a building and its contents—and one of its provisions prohibits the placing of a mortgage on one class only—the contents—a violation of the provision as to such class does not invalidate the policy as a whole but leaves it in force as to the other class—the building.

**Same—Waiver of Clause Against Encumbrance.**

4. Where a chattel mortgage on a piano insured under a separate policy was on file in the county clerk's office at the time the policy was issued and plaintiff had made no written application therefor or made any representations and no questions were asked him by the agent of defendant company who had full knowledge of the existence of the mortgage, defendant will be held to have waived the prohibition against encumbrance contained in the policy.

**Same—Denial of Liability Waives Notice and Proof of Loss.**

5. If the insurer within the time for presenting notice and proofs of loss denies liability or refuses to pay the loss, it thereby waives the necessity of presenting such notice and proofs.

**Same—Denial of Liability by Officer of Insurer—Identity of Officer—Evidence.**

6. Under the rule that the identification of a person need not be proven by positive declaration but may be shown by attendant circumstances, *held* that the testimony of plaintiff that shortly after the fire upon receiving notice from defendant company that his policy had been canceled, he went to its home office and asked to see the "boss," that a person was pointed out to him as such, giving his name, who was the vice-president and general manager of the company, and who informed him that payment would not be made, was sufficient to go to the jury upon the question of denial of liability by the company as constituting a waiver of notice and proofs of loss.

**Same—Notice of Cancellation of Policy not Denial of Liability for Loss.**

7. A written notice of cancellation of a fire insurance policy after a fire has occurred does not constitute a denial of liability so to dispense with the necessity of making proof of loss required by the policy.

**Same—Denial of Liability in Answer not Waiver of Notice and Proof of Loss, When—Pleading—Inconsistent Defenses.**

8. Under the rule of practice (Rev. Codes., 1921, sec. 9146) that defendant may set up as many defenses as he may have, even though inconsistent, provided they are not so far inconsistent with each other that if the allegations of one are true these of the other must of necessity be false, defendant insurance company's denial of liability on grounds other than failure of proof of loss did not constitute a waiver of notice and proof of loss.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

Action by Daniel Johnson against the Rocky Mountain Fire Insurance Company. Judgment for defendant and plaintiff appeals. Reversed and remanded.

*Messrs. O'Leary & Doyle,* for Appellant, submitted a brief; *Mr. W. F. O'Leary* argued the cause orally.

The defendant insurance company waived the provisions of the policy that the policy should be void unless plaintiff owned

in fee simple the land upon which the buildings were situated, by issuing the policy without a written application therefor by the insured, and without making inquiry of the insured as to his title to said property, and without informing the insured that the policy contained such a provision. (*Wright* v. *Fire Ins. Co.*, 12 Mont. 474, 31 Pac. 87; *Collins* v. *Metropolitan Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609; *Great Southern Fire Ins. Co.* v. *Burns*, 118 Ark. 22, Ann. Cas. 1917B, 497, 125 S. W. 1161.)

In order to constitute a breach of a condition in the policy to the effect that a change of ownership or the encumbrance of the property by mortgage will void the policy, the instrument transferring the title to the property or constituting the encumbrance must be a valid, subsisting and effective transfer or encumbrance is practically the universal rule. (*Phillips* v. *Farmers' Mutual Life Ins. Co.*, 208 Mich. 84, 7 A. L. R. 1606, and note, 175 N. W. 144; *Lipedes* v. *Liverpool & London Globe Ins. Co.*, 229 N. Y. 201, 13 A. L. R. 550, 128 N. E. 160; 26 C. J. 185, sec. 226.)

When an insurance company by denying liability leads a policy-holder to believe that the filing of proof would be fruitless it cannot afterwards in an action on the policy defend because of the failure to make such proof. (*O'Neill* v. *American Assur. Co.*, 52 Pa. Super. Ct. 577.) The reason for the rule as to waiver of the requirement to furnish notice and proof of loss is that the law does not require the doing of a useless thing. (*Hughes* v. *Central Acc. Ins. Co.*, 222 Pa. St. 462, 71 Atl. 923; *Savage* v. *Phoenix Ins. Co.*, 12 Mont. 458, 31 Pac. 66.)

On the question of the sufficiency of the evidence as to the identity of Dawson, see *People* v. *Franklin*, 46 Cal. App. 1, 188 Pac. 607; *Craig* v. *State*, 171 Ind. 317, 86 N. E. 397; *People* v. *Ralph*, 61 Cal. 540; *State* v. *Powers*, 130 Mo. 475, 32 S. W. 984; *People* v. *Dunbar Contracting Co.*, 215 N. Y. 416, 109 N. E. 554; *State* v. *McNeal*, 103 S. C. 197, 87 S. E. 1004;

*State* v. *Murphy*, 15 Wash. 98, 45 Pac. 729; *Hunter* v. *State*, 19 Ga. App. 615, 91 S. E. 927.)

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, submitted a brief; *Mr. W. H. Hoover* argued the cause orally.

A policy, which by its provisions provides that the entire policy shall be void in the event that any of its conditions are violated, is rendered totally void, whether the policy be in effect divisible or not, upon the happening of the event which operates as a forfeiture under any one of the conditions. Such a policy is to be distinguished from one not providing for the forfeiture of the entire policy in the event of a breach of a single condition. For cases supporting this rule see: *Dumas* v. *Northwestern Nat. Ins. Co.*, 12 D. C. App. 245, 40 L. R. A. 358; *Germier* v. *Springfield F. & M. Ins. Co.*, 109 La. 341, 33 South. 361; *Agricultural Ins. Co.* v. *Hamilton*, 82 Md. 88, 51 Am. St. Rep. 457, 30 L. R. A. 633, 33 Atl. 429; *Martin* v. *Insurance Co. of North America*, 57 N. J. L. 623, 31 Atl. 213; *Germania V. Ins. Co.* v. *Schild*, 69 Ohio St. 136, 100 Am. St. Rep. 663, 68 N. E. 706; *Schiavoni* v. *Dubuque F. & M. Ins. Co.*, 48 Pa. Super. 252; *McWilliams* v. *Cascade F. & M. Ins. Co.*, 7 Wash. 48, 34 Pac. 140.

Under registry laws, which impart notice only to subsequent purchasers and encumbrancers, an insurance company, when insuring property, is not bound to notice of the condition of the title of the property upon which it assumes risk. (Joyce on Insurance, sec. 2022; *Shaffer* v. *Mechanics' etc. Ins. Co.*, 17 Ind. App. 204, 46 N. E. 567; *Phoenix Ins. Co.*, v. *Overman*, 21 Ind. App. 516, 52 N E. 771; *Wicke* v. *Iowa State Ins. Co.*, 90 Iowa, 4, 57 N. W. 632; *Insurance Co.* v. *Holcomb*, 89 Tex. 404, 34 S. W. 915.) Knowledge of the right waived is a prerequisite to waiver. (40 Cyc. 252.)

An encumbrance subject to a condition subsequent is within the provisions of a stipulation against encumbrances in fire insurance policies and avoids the policy for the reason that

such an encumbrance having been once effective, even if only
for an instant, it has increased the risk and the moral hazard
and avoided the policy for all time. (*Thorne* v. *Aetna Ins.
Co.*, 102 Wis. 593, 78 N. W. 920; *Hamilton* v. *Fireman's Fund
Ins. Co.* (Tex. Civ.), 177 S. W. 173; Joyce on Insurance, 2d
ed., sec. 2022; *Lipedes* v. *Liverpool & London etc. Ins. Co.*, 229
N. Y. 201, 13 A. L. R. 550, 128 N. E. 160; *Carpenter* v.
*Providence etc. Ins. Co.*, 16 Pet. (U. S.) 494, 10 L. Ed. 1044
[see, also, Rose's U. S. Notes]; *Forword* v. *Continental Ins. Co.*,
142 N. Y. 382, 25 L. R. A. 637, 37 N. E. 615; *French* v. *Dela-
ware Ins. Co.*, 167 Ky. 176, 180 S. W. 85; *Lee* v. *Agricultural
Ins. Co.*, 79 Iowa, 379, 44 N. W. 683.)

Question of denial of liability by notice of cancellation of
policy as affecting notices and proofs of loss: Under this head
we will say briefly that plaintiff misinterprets the effect of a
notice of cancellation of a fire insurance policy. A cancellation
looks to the future and not to the past. (*Duncan* v. *New York
Mut. L. Ins. Co.*, 138 N. Y. 88, 20 L. R. A. 386, 33 N. E. 730.)
A cancellation must be made before loss, and it has no effect
upon a right of action which has previously accrued under the
policy. (*Baker* v. *Citizens' Mut. F. Ins. Co.*, 51 Mich. 243, 16
N. W. 391; 14 R. C. L. 1013; 26 C. J. 144, sec. 170.) The
purpose of a notice of cancellation is to give assured an op-
portunity to reinsure. (*Lipman* v. *Niagara Fire Ins. Co.*, 121
N. Y. 454, 8 L. R. A. 719, 24 N. E. 699.)

MR. JUSTICE STARK delivered the opinion of the court.

This action is based upon two policies of fire insurance issued
by the defendant to the plaintiff, one for $1,500 dated May 26,
1921, covering the buildings located upon lots 5 and 6 in
block 11, town site of Montague, and the contents thereof, as
follows: $700 upon the buildings and $800 upon the contents;
the other for $500, dated January 21, 1922, covering a piano
located in one of the buildings covered by the first policy.
Practically all of the insured property was destroyed by fire
on April 2, 1922. The defendant having refused to pay under

the policy, plaintiff brought this suit to recover the amount of his loss.

The policies are the "standard" form, and each contains the following clause: "This entire policy, unless otherwise provided by agreement indorsed herein, or added hereto, shall be void * * * if the subject of the insurance be a building on ground not owned by the insured in fee simple, or if the subject of the insurance be personal property and be, or become encumbered by a chattel mortgage." Each policy also contains the usual provision to the effect that, if fire occur, the insured shall give immediate written notice to the company of any loss sustained thereby, and shall also, within sixty days after the fire, render to the company a written and verified statement containing certain specified information, commonly referred to as "proofs of loss."

At the time the first policy was issued the title to lot 6 mentioned therein was vested in the plaintiff and his wife, Rosa Johnson. The title to lot 5 then stood in the name of the Milwaukee Land Company and so remained until June 15, 1921, when the company conveyed the same to plaintiff and his wife; the deeds conveying title of both these lots to plaintiff and wife were recorded on July 18, 1921. The plaintiff did not give defendant written notice of the occurrence of the fire, nor did he at any time furnish the company with the "proofs of loss" as required by the terms of the policies.

All of the foregoing facts are made to appear in the two causes of action set out in the plaintiff's complaint, which contains further allegations of facts whereby it is sought to show that defendant waived the condition of the policy relating to plaintiff's ownership of the lots upon which the insured buildings were located, and also waived written notice of the occurrence of the fire and the furnishing of proof of loss under each of the two policies.

By appropriate averments in its answer the defendant raised issue upon the questions of waiver pleaded in the complaint,

and denied liability under the $1,500 policy by reason of plaintiff's breach of conditions contained therein as to the ownership of the lots upon which the insured buildings were located, and his failure to give immediate notice of the occurrence of the fire and to make proofs of loss. The answer further alleges that on December 10, 1921, plaintiff executed and acknowledged a chattel mortgage covering all of the insured personal property to secure a note for $600 given to his wife, which mortgage was filed in the office of the clerk of the proper county on December 14, 1921, and that by reason thereof the $1,500 policy became void, and that the $500 policy was void at the time of its issuance and no recovery can be had upon either.

In reference to the chattel mortgage the plaintiff by reply alleged, in substance, that the same never became a valid or subsisting lien upon the property therein described and therefore did not violate the mortgage clause in the $1,500 policy; that the same was on file in the office of the clerk of the proper county when the $500 policy was issued and sets out facts in connection therewith similar to those contained in the complaint relative to the issuance of the $1,500 policy, and claimed that thereby defendant waived the mortgage clause in the $500 policy.

The case was tried before a jury. At the close of all of the testimony the court directed a verdict in favor of the defendant, upon which judgment was rendered. The plaintiff made a motion for a new trial, which was denied, and this appeal is prosecuted from the judgment.

The primary question presented is whether the court erred in directing a verdict in favor of the defendant, and this involves a determination of the following propositions:

(1) Whether there was any competent evidence tending to establish that the defendant waived the provisions of the first policy to the effect that the same should be void unless the plaintiff owned the lots upon which the buildings were located, in fee simple.

(2) The effect on that policy of plaintiff's subsequent execution of the chattel mortgage upon the personal property covered thereby.

(3) Whether, if the policy was not void *ab initio*, but its validity was affected by the chattel mortgage, the items thereof are severable, so that the policy was void in part and valid in part at the time of the fire.

(4) Whether there was evidence tending to establish that the defendant waived the clause in the second policy providing that it should be void if the piano thereby insured was mortgaged.

(5) Whether there was evidence tending to establish that the defendant waived the provisions of the policies in reference to giving immediate written notice of the occurrence of the fire and the furnishing of proofs of loss.

(1) That the plaintiff never owned lots 5 and 6 of block 11 [1] in fee simple; that he was the sole owner of the buildings located on said lots and had an insurable interest therein; that he made no written application for the $1,500 insurance policy; that no officer or agent of the company asked him any questions concerning the title to the lots upon which the buildings covered by the policy were located; that he made no representations whatever concerning his title to these lots; that prior to the issuance of the policy an officer of the bank which, as agent, issued the same, examined and went over the property to be insured and was entirely familiar with the same; that the clause in the policy with reference to title was not called to plaintiff's attention when the policy was issued and delivered to him and that he did not know about the same; that the plaintiff paid and defendant accepted and retained, and has not offered to return, the premium upon this policy, are facts which stand uncontradicted in the record.

Whether, under circumstances like these, an insurance company is liable under a policy containing the provisions and stipulations embraced in the one under consideration is a

question upon which the authorities are far from unanimous. This divergence of opinion is well stated in 14 R. C. L., page 1186, as follows: "Many courts maintain the proposition that where an insurer issues a policy without requiring any application or representations or omits in an application to make inquiry as to a ground of forfeiture provided for in the policy, it waives the right to insist on a breach existing at the time of the issuance of the policy. There is, however, considerable authority founded on sound reasoning that, when a policy is issued providing that it shall be void on certain conditions relating to the inception of the risk, the insurer may insist thereon notwithstanding the fact that no application or representations were made." In notes to this text a large number of cases are collected supporting the two theories.

In the case of *Wright* v. *Fire Insurance Co.*, 12 Mont. 474, 19 L. R. A. 211, 31 Pac. 87, this court adopted the doctrine which is announced in the first sentence of the paragraph above quoted. The opinion of Mr. Justice Harwood in that case sets out very clearly the principles upon which the ruling is based, and we see no reason why it should be departed from. Upon the authority of that case we hold that, since plaintiff had an insurable interest in the building when the policy was issued and the defendant did not require a written application for the policy or make inquiries concerning plaintiff's title to the lots, it cannot escape liability for the loss on the ground that plaintiff was not at that time the sole owner thereof in fee simple.

(2) Subsequent to the issuance of the $1,500 policy, and on [2]   December 10, 1921, the plaintiff and his wife, Rosa Johnson, had some difficulty and contemplated a separation. In an attempt to settle their property rights plaintiff signed a note for $600, payable to her, and also signed, verified, and acknowledged a chattel mortgage for the purpose of securing the payment of the same upon the personal property covered by this policy, which mortgage was filed in the proper office

on December 14, 1921. It is conceded that if this mortgage was a valid instrument it voided this policy upon the personal property covered thereby. The plaintiff, however, alleged in his pleadings and claimed in his testimony that this note and mortgage were only to become effective upon the happening of a future event, which in fact never did occur; that the note and mortgage were never in fact delivered to Rosa Johnson, but that the mortgage was filed without his knowledge or consent and therefore never constituted a valid encumbrance upon the personal property.

The rule as stated in 14 R. C. L., page 1130, section 309, is that an encumbrance to avoid a policy must be an effective one, which creates a valid and subsisting lien upon the property. In 3 Joyce on Insurance, page 3383, it is said: "If, however, a chattel mortgage is without consideration and there never was any debt secured thereby, the policy is not invalidated even though it was registered in the county, and even though an instrument is in the form of a chattel mortgage, yet if it is never delivered the policy is not voided as for an encumbrance." (*Insurance Co. of North America* v. *Wicker*, 93 Tex. 390, 55 S. W. 740; *Phoenix Ins. Co.* v. *Overman*, 21 Ind. App. 516, 52 N. E. 771; *Clifton Coal Co.* v. *Scottish Union National Ins. Co.*, 102 Iowa, 300, 71 N. W. 433; see, also, extended note to the case of *Lipedes* v. *Liverpool & London & Globe Ins. Co.*, 229 N. Y. 201, 128 N. E. 160, reported in 13 A. L. R. 550.)

There was a sharp conflict in the testimony upon the question of the delivery of this note and mortgage and as to whether or not they ever became effective. We think this matter should have been submitted to the jury under appropriate instructions.

(3) If, upon the trial, it should be determined that the [3] chattel mortgage mentioned in paragraph 2 above in fact became a valid encumbrance upon the personal property covered by the $1,500 policy, it will then be necessary to determine

whether this fact voided the entire policy, or whether it rendered it invalid only as to the personal property. It will be noted that of the items in this policy making up the total of $1,500, $700 was upon buildings and $800 upon personal property contained therein. A similar question was presented in *Wright* v. *Fire Ins. Co., supra,* and in reference thereto it was held, as stated in the syllabus to the case: "Where an insurance policy places specific amounts of insurance on distinct and separate classes of property, and contains a prohibition against mortgage as to merchandise alone, a violation of such prohibition, even if it rendered the policy void as to merchandise, would not invalidate the policy as to other classes of property covered thereby." (See 2 Cooley's Briefs on the Law of Insurance, 1767.) So, in this case, we hold that the chattel mortgage would not invalidate the policy except as to the personal property which was included therein.

(4) With reference to the $500 policy covering the piano [4] the circumstances surrounding its issuance were substantially the same as those surrounding the issuance of the $1,500 policy. The alleged chattel mortgage which it is claimed voided this policy was in existence and on file in the proper county office several months before the policy was issued. No written application was made for this policy, and the plaintiff made no representations in connection therewith, and no questions were asked of him concerning encumbrances upon the insured property; but it does appear that Peterson, vice-president of the agent bank, had full knowledge of the existence of the mortgage and was present and participated in the negotiations between plaintiff and his wife which led up to its execution. What is said in paragraph 1 above with reference to the title to the lots on which the buildings were located is equally applicable to the mortgage on the piano, and even if it shall be determined that the chattel mortgage was a valid and subsisting lien upon the piano, under the circumstances

disclosed, defendant cannot escape liability on this policy under the rule laid down in *Wright* v. *Fire Ins. Co., supra.*

(5) Finally, it is contended by defendant that the court did [5] not err in directing a verdict in its favor, for the reason that the plaintiff failed to comply with the provisions of the policies by not giving immediate written notice of the occurence of the fire and furnishing proofs of loss. The answer admits that within a few days after the fire defendant received actual verbal notice thereof and that on April 18 it mailed to the plaintiff a written notice of cancellation of the $1,500 policy above set out, which was received by plaintiff on or about April 20, and the plaintiff testified that within two or three days, or a few days, after receiving this notice he went to the home office of the defendant in Great Falls and asked to see the "boss." In response to this request a party in the office pointed out the one for whom plaintiff had inquired, and this person in a somewhat lengthy conversation with plaintiff concerning the fire, in which he showed familiarity with the circumstances connected therewith and assumed to speak for the company, informed plaintiff that the defendant would not make any payment under the policies for the losses sustained. Plaintiff also stated that to the best of his belief the person with whom he so talked was Mr. Dawson, who was admitted to be the vice-president and general manager of the defendant company and the "boss."

Dawson was called as a witness for the defendant, but in his testimony did not deny plaintiff's assertion that he (Dawson) had said the company would not pay plaintiff's loss, but contented himself with the declaration that he "did not have a conversation at any time within two or three days, or a few days, after April 19th, with the plaintiff Daniel Johnson."

It is the general rule that, if the insurer within the time for presenting proofs of loss denies liability or refuses to pay the loss, it thereby waives the necessity for presenting such proofs. (26 C. J. 406; *Savage* v. *Phoenix Ins. Co.,* 12 Mont.

458, 33 Am. St. Rep. 591, 31 Pac. 66.) But it is urged by counsel that, since plaintiff could not positively identify Dawson as the man with whom he talked in the home office of the company, there was no proof to go to the jury that the defendant had denied liability for the loss sustained under these policies. This contention cannot be sustained. Even in a criminal case the identification of the accused need not be proven by positive declarations, but may be shown by the attendant circumstances. As was said by the court in *Craig* v. *State*, 171 Ind. 317, 86 N. E. 397: ''As a general rule, a wide range is given to evidence upon the question of the identity of the accused person with the guilty party. Generally speaking, the identification of the person charged with the commission of the offense is not required to be established by direct or positive evidence. The witness, upon his examination, may testify that he believes or is of the opinion that the accused is the person who committed the crime. His means of knowledge, however, or the facts upon which he bases his belief or opinion, in respect to the identity of the accused, may be thoroughly tested or disclosed upon cross-examination. The weight or degree to be given to the testimony of such witness or witnesses is a matter for the determination of the jury or court trying the case.''

Here the plaintiff, soon after receiving notice of cancellation of the $1,500 policy, went to the home office of the company, asked for the proper officer, was directed to such person, had a conversation with the person indicated, who appeared to be familiar with the subject matter under consideration, and, assuming to speak for and on behalf of the company, stated that it would not pay the loss, and plaintiff said to the best of his belief this person was Dawson. These facts were sufficient to send the case to the jury upon the question of denial of liability as constituting a waiver of notice and proofs of loss.

The plaintiff urges that the written notice which he received from the company constituted a denial of liability so as

to dispense with the necessity of making proofs of loss as to the $1,500 policy. We do not think that this position is well taken, since a reading of this notice discloses that it was only effective as to future losses which might be sustained to the property insured.

Plaintiff further contends that the defendant's denial in its [8] answer of liability under these policies upon other grounds likewise constituted a waiver of notice and proofs of loss, and cases are cited which sustain this contention. We do not think, however, that contention can be sustained under the practice in this state, since section 9146, Revised Codes of 1921, permits a defendant to set up as many defenses to an action as he may have, and under this section it has frequently been held that even inconsistent defenses may be interposed provided they are not so far inconsistent with each other that if the allegations of one are true the allegations of the other must of necessity be false. (*Johnson* v. *Butte & Superior Copper Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057; *O'Donnell* v. *City of Butte,* 44 Mont. 97, 119 Pac. 281; *Day* v. *Kelly,* 50 Mont. 306, 146 Pac. 930; *Chenoweth* v. *Great Northern Ry. Co.,* 50 Mont. 481, 148 Pac. 330.)

For the reasons above indicated we think the court was in error in withdrawing the case from the jury and entering judgment in favor of the defendant. The judgment is reversed and the cause remanded to the district court, with directions to grant the plaintiff a new trial.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Holloway, Cooper and Galen concur.