THIELBAR REALTIES, INC., Respondent, v. NATIONAL
UNION FIRE INSURANCE CO., Appellant.

(No. 6,882.)

(Submitted January 14, 1932. Decided March 3, 1932.)

[9 Pac. (2d) 469.]

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. Ernest Abel,* of Counsel, argued the cause orally.

*Messrs. Speer & Hoffman,* for Respondent, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The National Union Fire Insurance Company, a corporation, has appealed from a judgment against it and in favor of "Thielbar Realties, Inc.," entered in an action brought by the latter for the reformation of a policy of insurance and recovery thereunder.

The record warrants the following statement of the case: Prior to 1926 one Ethel Warren had conducted a resort known as "Ethel's Place," on the outskirts of Shelby, and near it stood a like resort called the "Chicken Shack." The latter was "closed," and the Warren woman purchased the building and moved it to a tract of land approximately a mile out of town, on which she secured a lease. At some time not designated, Ethel Warren married Fred Thielbar, and the plaintiff company was incorporated with Mrs. Thielbar as president, Thielbar as secretary-treasurer, and one H. Norskog, an attorney, as vice-president and counsel. The three constituted the board of directors, and Norskog acted as secretary in the absence of Thielbar.

In the spring of 1926, Ethel Warren Thielbar assigned her lease to the plaintiff; the "shack" was torn down, and from the salvaged lumber and new material plaintiff commenced the erection of a building consisting of a dance-hall and five small rooms, to be known as "Ethel's roadhouse," where food, drink and entertainment would be furnished by Mrs. Thielbar and women known as the cook, the piano player and "entertainers."

In August, when the building was partially completed and occupied for the above purposes, D. Watson Robb, vice-presi-

dent of the "Moon Agency" of Great Falls, and who had known Ethel Warren for fifteen years, visited the establishment, accompanied by a state agent of the defendant company, for the purpose of soliciting insurance on the building and was successful to the extent that, in September, the Moon Agency, as local agent for the insurance companies, wrote a $1,000 policy in the defendant company and a like policy in the Netherlands Insurance Company. On the completion of the building, the first of these policies was surrendered and a new policy written giving a coverage of $2,000 on the building, $150 on furniture, and $350 on Mrs. Thielbar's clothing.

In drafting the original policies, Robb, the agent, well knowing the business which was being conducted in the building, suggested that it be issued as a "community hall," and this was done, and, having the lease before him for the purpose of describing the land on which the building stood, and thus being advised as to the nature of the insured tenure, wrote the insurance, although the policy contains the printed provision that the policy shall be void "if the subject of insurance be a building on ground not owned by the insured in fee simple."

The lease describes the tract by metes and bounds, but only with reference to lot 6 of block 8 of "Guth's" first addition to Shelby, and, while the agent had the lease before him for the purpose of description, he mistook the tract to be described as "Lot 6, Block 8, *Guthrie's* first Addition to Shelby," and so described it in the policy. As a matter of fact there was neither a "Guth's" nor a "Guthrie's" addition to Shelby recorded in the county clerk's office. The land should have been described in both the lease and the policy by metes and bounds and as located in the southwest corner of the proper legal subdivision of the section.

In early November, Mrs. Thielbar became sick, and in consequence closed the roadhouse and left it under the supervision and care of a reliable and competent person, with all doors and windows closed and locked and all rubbish cleared

away, inside and out. The vacancy was reported to the Moon Agency within forty-eight hours, and, on November 20, it issued and attached to the policy a vacancy permit valid for thirty days, within which period the building and contents were totally destroyed by fire. The agency was duly notified of the loss, and, on January 8, 1927, plaintiff made and filed formal proof, under oath, and therein stated that at the time of the fire the building was used as a "community hall."

Shortly after the fire and before the filing of the formal proof of loss, an officer of the Pacific Coast Adjustment Bureau visited Shelby for the purpose of investigation, but did no more than inquire of the county clerk of the existence of "Guthrie's" addition, and, finding no record thereof, notified the Moon Agency and Norskog that the policy did not cover the property destroyed. Tender was made by the adjuster of the amount of the premium on cancellation of the policy, which tender was not accepted.

The complaint correctly describes the leased land, and alleges that the misdescription was the result of mutual mistake. It alleges that the building was declared, in the proof of loss, to have been occupied as a "community hall" because of the recommendation of defendant's agent, and that, if the proof was defective in this regard, the defect was waived by failure to specify it as ground for rejection of the claim.

The answer admits the issuance of the policy, the destruction of the property by fire, and that the loss exceeded the coverage, but denies the validity of the policy, denies that the land was misdescribed by "mutual mistake," and denies all liability. It sets up special and separate defenses to the effect that the action is barred by the terms of the policy and by the statute of limitations; that the policy is void for misrepresentation respecting the ownership of the land, the use of the building, and by reason of vacancy without permit from November 1 to November 20. Issue was joined by reply and the cause tried to the court sitting with a jury.

At the close of the case the court discharged the jury and thereafter made findings of fact and conclusions of law in favor of plaintiff and in conformity with the foregoing statement, and thereon entered judgment reforming the policy and fixing the amount of recovery.

The defendant has made thirty-three assignments of error based upon rulings of the court on the introduction of testimony, on the alleged insufficiency of the evidence to support the findings, and on the refusal of the court to make tendered findings, but argues only the following propositions:

The plaintiff is not entitled to a reformation of the policy; the action is barred by the terms of the policy or by the statute of limitations; misstatements as to the use and occupancy of the building render the policy void; the policy is void by reason of the fact that the insured was not the owner in fee of the land on which the building was situated; and vacancy without a permit renders the policy void.

Under the first assertion it is argued that the only provision of section 8726, Revised Codes of 1921, applicable is for relief on the ground of "mutual mistake," and no such mistake was shown. The rule is that, "in order that a written instrument may be reformed in equity for mistake, it must appear that the parties agreed upon a certain contract; that they executed a contract * * * ; that the contract executed was not the one agreed upon; that the variance * * * occurred by mistake; in what the mistake consisted; and that the mistake was mutual." (*Gassert* v. *Black*, 11 Mont. 185, 27 Pac. 791, 793.) "A mutual mistake is one which is reciprocal and common to both parties, where each alike labors under the same misconception." (23 R. C. L. 328; *Comerford* v. *United States F. & G. Co.*, 59 Mont. 243, 196 Pac. 984.)

It is at least doubtful that, under the circumstances, a reformation of the policy was necessary. While there are decisions to the contrary, "a long line of authorities holds that, where, by mutual mistake of the parties or error on the part of the insurer, the policy misdescribes the property intended to be insured, or falsely states the location of such

property, no reformation of the policy is necessary in order to permit a recovery thereon." (66 A. L. R. 767, note, where the authorities are assembled.) In addition to the authorities there cited, see *Kansas Farmers' Fire Ins. Co.* v. *Saindon,* 52 Kan. 486, 39 Am. St. Rep. 56, 35 Pac. 15; *Holyfield* v. *Farmers' Alliance Ins. Co.,* 132 Kan. 539, 296 Pac. 710, 712; *State Mutual Ins. Co.* v. *Green,* 62 Okl. 214, L. R. A. 1917F, 663, 166 Pac. 105. The theory on which recovery is permitted without reformation is waiver or estoppel. (66 A. L. R. 768, note; see, also, *Johnson* v. *Rocky Mountain Fire Ins. Co.,* 70 Mont. 411, 226 Pac. 515.)

In *Holyfield* v. *Farmers' Alliance Ins. Co.,* above, the court declared: "There was plenty of extrinsic evidence that the property was located at the farm actually owned and occupied by appellee. It is very probable that there was not anybody in the court room on the day the case was tried who did not know where this property was located, and certainly the insurance company knew, because its agent came out and saw the property and wrote the application. * * * Plenty of extrinsic evidence showed that nobody was deceived. If the court should insist that there should be a reformation in this case, it would just be cluttering up the records of Leavenworth county with one more unnecessary lawsuit."

However, the evidence before us is sufficient to warrant a ▮ reformation, if reformation was necessary before recovery. Here, as in the *Holyfield Case,* the agent visited the premises, and, as found by the court, the officers of the Moon Agency "knew with certainty the particular location of the building and the premises upon which it stood," and, as in the Holyfield decision, "it is very probable that there was not anybody in the court room * * * who did not know" where "Ethel's roadhouse" was located. The intention of the parties was to insure *that* building and none other. In referring to the designation of the use the agent suggested that "this building" be designated as a community hall. The description of the land on which the building was situated "is only a nominal part of the contract." (*Fidelity-Phoenix*

*Fire Ins. Co.* v. *First National Bank,* 145 Okl. 289, 292 Pac. 829, 830), and as both the insurer and the insured intended to insure the building and correctly to describe its location, known to both, but neither knew the correct description and both thought that the land was being correctly described in the policy, the mistake was mutual and the court did not err in reforming the policy (*State Mutual Ins. Co.* v. *Green,* above).

The assertion that the policy is void under the clause appearing in the mass of printed matter on the reverse side of the policy declaring that it will be void if the land is not owned in fee, is disposed of by the ruling in *Stevens* v. *Equity Mutual Fire Ins. Co.,* 66 Mont. 461, 213 Pac. 1110, where it is held that the knowledge of the agent is knowledge of the company, and that any error or neglect on the part of the agent in stating the title or interest of the assured will not avoid the policy. There this court stated that the assured is not bound to discover every condition which "crouches unseen in the jungle of printed matter with which the modern policy is overgrown, designed to make a defense for the company after the loss has occurred against which the insurance professes to guard," and that the "heads I win, tails you lose" attitude of the company that it may retain the premium in case the policy expires without loss, but may return the premium and cancel the policy in case of loss, cannot be upheld.

The same reasoning applies to the contention that the policy is void for "misrepresentation" with respect to the use to which the building was put. The agent was well aware of the actual use to which it was put and it was at his suggestion, and not because of any misrepresentation in the application for the policy, that the statement was made in the policy, and, consequently, in the proof of loss, that the building was used as a community hall. If the misstatement as to use invalidated the policy it was void in its inception, but under the circumstances the defendant waived the breach or is estopped from setting it up as a defense. (*Johnson* v.

*Rocky Mountain Fire Ins. Co.*, 70 Mont. 411, 226 Pac. 515; *Krpan* v. *Central Federal Fire Ins. Co.*, 87 Mont. 345, 287 Pac. 217; 14 R. C. L. 1186.)

A second provision which "crouches unseen in the jungle of printed matter" on the back of the policy, and which defendant contends has devoured plaintiff's right of recovery, is that "no suit or action on this policy, for the recovery of any claim shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after the fire." Thus the parties assumed to legislate to shorten the statutory period of limitation prescribed. Relying upon *Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, defendant contends that plaintiff could, and did, waive the benefit of the statute. Further, that the general rule is that where a policy contains such a stipulation, the action must be brought within the time limited or it is barred, unless the provision is waived. (Cooley's Brief on Insurance, 2d ed., 6800; 5 Joyce on Insurance, 5346; 14 R. C. L. 1417; 33 C. J. 76.)

The general rule is, of course, applicable in the absence of statutory regulation to the contrary, which would declare the public policy of the state. In *Parchen* v. *Chessman*, above, this court declared that "what is the public policy of a state, and what is contrary thereto, are questions to be determined, not by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the law-making power, and, in the absence of them, to the decisions of the courts," and then held that a waiver of the statute of limitations was not contrary to public policy, for the law-making power has declared that "anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (Sec. 6181, Rev. Codes 1907, now sec. 8742, Rev. Codes 1921.)

However, at the time the *Parchen-Chessman Case* was decided there existed on our statute books section 5056, Revised Codes of 1907, now section 7558, Revised Codes of 1921, which

reads: ''Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.''

Just prior to the decision in the *Parchen-Chessman Case,* this court, speaking of the above enactment, said: ''Some of the conditions which the section is designed to meet are illustrated in *Randall* v. *American Fire Ins. Co.,* 10 Mont. 340, 24 Am. St. Rep. 50, 25 Pac. 953, *Cotter* v. *Grand Lodge A. O. U. W.,* 23 Mont. 82, 57 Pac. 650, and *Wortman* v. *Montana Central Ry. Co.,* 22 Mont. 266, 56 Pac. 316; and within its purview are also provisions in a contract by which enforceable rights thereunder are lost unless sued upon within a specified time.'' (*Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653.)

The distinction between the *Parchen-Chessman Case* and the case before us is clear. In the first the stipulation ''waived'' the statute of limitations, the assertion of which is a personal privilege under our statutes; consequently the stipulation there held valid did not restrict any party to the contract from enforcing it in the courts; nor did it ''limit the time within which he may thus enforce his rights,'' and consequently did not come within the ban of section 7558. Here the stipulation relied upon by defendant did just that which the statutes proscribes: it limited the time within which the law declared an action for the enforcement of the rights of the policy holder might be brought, and, under the provisions of section 7558, declaring the public policy of this state, the provision relied upon is void, regardless of the general rule prevailing in the absence of such a statute.

But defendant contends that the action was barred by the statute of limitations before the complaint was filed. In this contention it relies upon the provisions of section 9033, subdivision 4, Revised Codes of 1921, which declares a two-year limitation on the right to bring ''an action for relief on the ground of fraud or mistake,'' but provides that the ''cause

of action in such case [is] not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.''

The only case which has been called to our attention directly in point on the question of the applicability of this statute to such a case as this is *Grand View Building Assn.* v. *Northern Assur. Co.,* 73 Neb. 149, 102 N. W. 246, affirmed on appeal to the supreme court of the United States, 203 U. S. 106, 51 L. Ed. 109, 27 Sup. Ct. Rep. 27, wherein it is pointed out that such an action is not brought for the reformation of the contract, but for recovery on the contract, and ''the aid of equity is requisite * * * merely as auxiliary thereto—for the purpose, largely, of interpretation.'' It is held that such a statute as our section above quoted is not applicable, but that the applicable statute is that fixing the time within which an action may be brought on the contract.

There is considerable doubt in the record as to whether plaintiff discovered the mistake more than two years prior to the commencement of its action. The defendant contends that the notice given Norskog in December was notice to the plaintiff corporation, of which he was then an officer, and, consequently, the action commenced in January, 1929, was barred by the two-year limitation; while the plaintiff asserts that Norskog was not such an officer as is charged with communicating to his company the information he received, and therefore notice to him did not constitute notice to plaintiff. We need not decide the controversy, as we agree with the Nebraska court that, as the action was brought primarily for the enforcement of the contract, and reformation, if necessary at all, was but auxiliary to the purpose of the action, subdivision 4 of section 9033, above, limiting only the time in which an action may be brought ''for relief on the ground of fraud or mistake,'' is not applicable. The action was timely.

Contention is made that the court erred in permitting Ben Cominge, president of the Moon Agency, to testify to the effect that the man who accompanied Robb to the roadhouse at the time the insurance was solicited was the special agent of

the defendant company, but, if error was committed, it was harmless, as it is clear that the Moon Agency represented the defendant, and Robb had authority to solicit and write the insurance; it was therefore immaterial whether or not an agent of the defendant was present.

As to the contention that the vacancy without permit rendered the policy void, and that no proof was offered to establish the Moon Agency's authority to issue such a permit, the evidence is sufficient to show that the Moon Agency was agent for the defendant company, and it would seem that it had either actual or ostensible authority to grant a vacancy permit; but whether it had or not is unimportant, as the policy was not canceled for vacancy, nor was a vacancy without a permit given as a ground for the rejection of plaintiff's claim for loss. The Moon Agency, the only representative of the defendant company in this state so far as the record discloses, was duly notified of the vacancy in the early part of November; it did not intimate an intention to enforce a forfeiture, but lulled the insured into a sense of security and finally issued the permit.

While the stipulation in such a policy that it should become void if the building should become vacated is one which the parties may lawfully make and to which effect must be given under proper circumstances, if the insured notified the insurer through its agents of a vacancy and the insurer fails to notify the insured that it refuses to be further bound or to continue the risk or of its intention to enforce the forfeiture, after loss it will be held estopped to deny liability on the ground of such forfeiture. (*Patterson* v. *American Ins. Co.,* 164 Mo. App. 157, 148 S. W. 448; *Viele* v. *Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec. 83; *Hanscom* v. *Home Ins. Co.,* 90 Me. 333, 38 Atl. 324.)

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied April 6, 1932.