**DOHENY v. UNITED STATES FIDELITY & GUARANTY CO. (two cases).**

Nos. 69, 70.

District Court, D. Montana.

Aug. 29, 1940.

E. J. McCabe, of Great Falls, Mont., for plaintiff.

Toole & Boone, of Missoula, Mont., for defendant.

PRAY, District Judge.

The above entitled causes, numbered 69 and 70, were heard together, as the facts are identical and the law applicable thereto the same. The pleadings are alike in both cases.

Judgments were obtained in both causes against the contractors in question, Coverdale and Johnson, co-partners, in the state court, and after affirmation thereof on appeal, executions were issued thereon and subsequently returned to the effect that no property could be found in either case; thereafter this suit was commenced against the above named defendant.

A surety bond was furnished the contractors by defendant in support of a writ-

ten contract of Coverdale and Johnson with the State of Montana for the performance of work and the furnishing of materials in improving the Augusta-Sun River highway for the sum of $15,615.66; the contract required the co-partners to furnish a surety bond in that amount on a form provided by the State Highway Commission. In the bond furnished the co-partners were named as principal and the defendant corporation as surety, and it was provided therein, among other things, that the principal would "in all respects faithfully perform all of the provisions of said contract, and his, their, or its obligations thereunder including the specifications therein referred to and made a part thereof". There was incorporated in the agreement the following requirement: "The contractor shall carry public liability insurance to indemnify the public for injuries or damages sustained by reason of the carrying on the work. This insurance shall be in the amount of at least $10,000.00 for one person and a total of $20,000.00 for one accident. The contracter shall submit adequate evidence to the Commission that he has taken out this insurance." Thereafter the defendant notified the Montana Highway Commission by letter that it had executed a bond covering the assured contractors and had issued Public Liability policy of $10,000 and $20,000. This letter seems to have been written following a letter from the Highway Commission to the co-partners calling attention to the public liability insurance requirement of the agreement, and requested a letter from the insurance agent who furnished the policy as the preferable form of evidence of compliance to be submitted to the Highway Commission. The evidence shows that neither the public liability insurance policy nor a copy thereof was ever submitted to the Highway Commission. The agreement in question contains requirements providing that the "agreement", the "Contract Bond" and "any and all supplemental agreements made or to be made are hereby made a part of these specifications and contract and are to be considered one instrument." The contractors, Coverdale and Johnson, commenced work under their agreement on or about September 25, 1934 and continued until about February 1, 1935. On December 10, 1934, E. O. Johnson, one of the co-partners, and one George Bardon, an employee, drove an automobile to Great Falls, accompanied by the two girls, Mar-

guerite and Roberta Doheny, named in the title, whom they had invited to ride with them. The purpose of the trip to Great Falls was to deliver a two drum hoist which they had been using in performance of the contract and were returning according to their agreement. After delivering the hoist the four persons above named returned in the automobile towards Augusta, the home of the girls and the site where the work under the said contract was being performed. When they arrived near Simms, Montana, Bardon, who was driving for Johnson, turned off the highway and crashed into a tree, in what was alleged to be a grossly negligent and reckless manner, and as a direct result thereof the two girls received severe injuries from which they later died.

Two actions were commenced in the District Court of Cascade County against the co-partnership. Co-partner Coverdale appeared and defended the actions, claiming in defense that the girls' injuries and death were not the result of negligence in the performance of an act within the scope of the business of the co-partnership. The two cases were consolidated for trial and a verdict and judgment rendered in favor of the administratrix of the estates of the deceased, in each case, for the sum of $5,116.89, and upon appeal both judgments were affirmed, Doheny v. Coverdale, 104 Mont. 534, 68 P.2d 142; the same administratrix is the plaintiff in the instant cases. Executions on the two judgments were thereafter issued and returned by the sheriff unsatisfied, and no part of the judgments, or either of them, has ever been paid. Thereafter the administratrix herein made written demands upon defendant, United States Fidelity and Guaranty Company, for payment of the judgments but no payment has ever been made.

In its answer defendant alleged that it had written a public liability insurance policy but that the policy contained an exclusion under which the driving or using of any vehicle or automobile was excepted from the coverage provided in said policy.

As it appears to the court there can be no question that the injuries and death of the two girls occurred in the manner set forth in the complaints and in the course of the carrying on of the work by the co-partners, Coverdale and Johnson, under their agreement with the State Highway Commission. The co-partnership was engaged in performing work under the agreement when the girls were injured. Much has been said about the alleged attempt on the part of defendant to conceal the facts relating to the public liability insurance policy in suit, and in fact the policy itself. Exactly what reason might have actuated the insurer or its representative in not making known the terms of the policy to the State Highway Commission or the parties to the suit is not fully disclosed. Plaintiffs complain that the original policy was not produced until the trial of the present cases, and that until then they were without definite knowledge of its terms, and because of insurer's attitude in refusing information concerning its terms, they charge the insurer with the exercise of bad faith. In substance the insurer contends that the liability of the defendant company must be determined from the language of the policy without consideration of the agreement and bond pursuant to which the policy was written and premium paid therefor. Plaintiffs contend that in signing the bond and issuing the policy pursuant to the terms of the agreement the defendant agreed to such terms and is bound thereby, and was acting with full knowledge with no waiver of requirements on the part of the Highway Commission, as is apparent from the letter written Coverdale and Johnson by the Highway Commission requiring them to furnish a policy according to the terms of the agreement, and thereafter the defendant by letter notified the Highway Commission it had issued the public liability policy. Although the policy, or a copy thereof, was never submitted to the Highway Commission, the letter from defendant to the Commission was evidently accepted as a statement that the policy conformed to the requirements of the agreement, as the co-partners were thereafter allowed to proceed with their work under their agreement with the Commission.

■ Plaintiffs rely, among other things, upon the rule that where several instruments are made at the same time in relation to the same subject matter they may be read together as one instrument and the recitals in the one may be limited by reference to the other. This rule may obtain even when the parties are not the same if the several instruments were known to all parties and were delivered at the same time to accomplish an agreed purpose. Here the parties, the State Highway Commission, the copartners and the defendant, were all interested in and familiar with the

891

agreement and specifications and well knew the part to be performed by each to fulfill the specific requirements; one could not partially perform his part and expect to escape responsibility for his failure. There was nothing new or novel about this undertaking, the obligations were known and understood by all the parties and rested upon what appears to have been adequate consideration.

Defendant's counsel have presented able and exhaustive briefs covering the various phases of the case but none of the authorities examined by the court rest upon the same state of facts as are found here, and such differences seem to be material and to distinguish this case from the others relied upon.

■ The exclusion provisions relied upon by defendant to defeat recovery herein are so antagonistic to the requirements of the agreement, and the intent and purpose of its terms, as to render them wholly inoperative in the present cases, in the opinion of the court. The defendant as an insurer assumed the burden of protecting members of the public from injury and was paid its premium therefor, and having accepted the benefit should also accept the burden. Sec. 8750, R.C.M.

As a precaution and additional security for the protection of members of the public from injury in such a situation as appears to have arisen by reason of the failure of the defendant to do what the letter to the Highway Commission would indicate that it had done, this very comprehensive provision, heretofore referred to, was inserted in the agreement in question: "All things contained herein together with 'advertisement for proposals' or 'notice to contractors' and the contract bond as well as any papers attached to or bound with any of the above, also any and all supplemental agreements made or to be made, are hereby made a part of these specifications and contract and are to be considered one instrument."

It seems highly probable that the language "any and all supplemental agreements made or to be made" would include a contract of public liability insurance such as is involved in this controversy, and make it one with the agreement which contained these comprehensive terms, and especially when the defendant and insurer had full knowledge and was in the business of writing such bonds and contracts of insurance, and knew what was expected

and required under the plain and specific language of the agreement, and was paid its price for doing so, and not for inserting exclusion provisions which would render the policy inoperative as to injuries most likely to occur.

It is also contended that the plaintiffs can not recover because the accident occurred some ten or twelve miles from a bridge under construction by the co-partners; it appeared in evidence in the state court that the transactions under the contract were extended, or scattered, as the witness Bernstein said, over a distance of ten miles towards Great Falls and five miles towards Augusta. As to this particular question both the state District Court and the Supreme Court apparently found no objection. Doheny v. Coverdale, 104 Mont. 534, 68 P.2d 142.

Many authorities have been cited to sustain counsel in their respective contentions; some of the following cases appear to have been relied upon by both sides: Peterson v. Miller Rubber Co., 8 Cir., 24 F. 2d 59; Union Bank & Trust Co. v. Himmelbauer, 57 Mont. 438, 188 P. 940; Dodd v. Vucovich, 38 Mont. 188, 99 P. 296; Gary Hay & Grain Co., Inc., v. Carlson, 79 Mont. 111, 255 P. 722; 36 C.J., p. 1062, Sec. 14; Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 261 P. 880; Johnson v. Rocky Mountain Fire Insurance Co., 70 Mont. 411, 226 P. 515; National Surety Co. v. Ulmen, 9 Cir., 68 F.2d 330—the contract here contained no provision requiring the contractor to pay members of the public for injuries, in the present case the opposite is true; Whittaker v. United States Fidelity & Guaranty Co., D.C., 300 F. 129; Secs. 7529, 7531, 7533, 7538, 7545, 10521, R.C.M.

The principles of law found in the authorities and statutory provisions cited seem to favor the plaintiffs. Under the construction given the policy reading it as one with the agreement and bond, together with the evidence, reformation seems unnecessary, since it would mean the same in either event.

Not all of the specific arguments advanced in the voluminous briefs of counsel for the respective parties have been discussed here since it would result in an unnecessary extension of this opinion and apparently without a corresponding benefit either way, but the court has endeavored carefully to consider and weigh the many different angles of approach by counsel

892

in their efforts to reach a favorable solution of the problems presented as affecting their respective interests. Bearing in mind the facts which appear to have been established, as plaintiffs contend, by a preponderance of the evidence, and the principles of law that ought to control, the court feels justified in the conviction that the plaintiffs ought to prevail in both of these cases, and that judgments should be entered accordingly, and it is so ordered, with costs.

Findings of ultimate facts and conclusions of law may be submitted in accordance with these views.